[S. F. No. 4351.   Department Two.—June 10, 1908.]

## KULLMAN, SALZ & CO., Respondent, v. SUGAR APPARATUS MANUFACTURING COMPANY, Appellant.

ACTION TO RESCIND PURCHASE OF MACHINE—WRITTEN CONTRACT—EXPRESS WARRANTY—EVIDENCE—ORAL REPRESENTATION AND IMPLIED WARRANTIES INADMISSIBLE.—In an action to rescind a written contract for the purchase of a machine containing an express warranty, all oral representations and implied warranties are merged in the written contract, and evidence thereof is inadmissible to vary its terms.

ID.—EXPRESS ALLOWANCE OF TIME TO EXPERIMENT.—The fact that by the terms of the written contract time was allowed for experiment with the machine, and that, in case it was returned, the advance payment was to be retained in consideration of the return of a second-hand machine, negatives the idea that there was any other warranty than that expressed in the written contract.

ID.—USE OF TRADE NAME IN CONTRACT.—The mere use of a trade name in the written contract cannot carry with it implied warranties not expressed in the contract.

ID.—CODE WARRANTIES NOT PLEADED OR PROVED.—Code warranties contained in sections 1767, 1769, and 1776, of the Civil Code, which were not pleaded or proved cannot be relied upon by the plaintiff.

ID.—BREACH OF EXPRESS WARRANTY—SUPPORT OF FINDING—CONFLICT—RESCISSION JUSTIFIED—ERROR IN EVIDENCE NOT PREJUDICIAL.—Where a breach of the express warranty was pleaded as a ground of rescission of the contract, and a finding of such breach was supported by the evidence for the plaintiff, notwithstanding conflicting evidence for defendant to the contrary, such finding and proof justified the judgment rescinding the contract, and the error in receiving inadmissible proof of oral representations and implied warranties was not prejudicial, and will not necessitate a new trial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Gray & Leet, for Appellant.

M. B. Kellogg, and A. E. Shaw, for Respondent.

HENSHAW, J.—Plaintiff sued to rescind a contract for the purchase of a "Lillie triple-effect evaporator," and for the recovery of such part of the purchase price as it had paid, because of the failure of the machine to meet the requirements of a warranty expressed in the written contract between the parties. Judgment was given for plaintiff, and from the judgment and order denying its motion for a new trial defendant appeals.

Plaintiff is a California corporation engaged in the business of tanning hides. Defendant is a corporation engaged in the manufacture of machinery in the state of Pennsylvania. As a branch of its business, it manufactures evaporating apparatuses and machines, one of which is, by its trade name, designated a "Lillie triple-effect evaporator." In plaintiff's process of tanning, the hides are successively dipped in tannic solutions of constantly increasing strength. These solutions are obtained by running water over the tanbark and leaching the tannin therefrom. The first and weakest solution to which the hides were subjected was one of eighteen or twenty degrees barkometer, and the solutions were gradually increased in strength to forty-five or fifty degrees barkometer. When there was a failure of the water to extract as high as eighteen or twenty per cent from the tanbark, the result was a solution unsuitable for tanning uses, and thus a waste product. Plaintiff conceived the idea that it might be able to employ an evaporating and condensing apparatus whereby the percentage of tannin in these low solutions could be so increased as to make them available for use. Plaintiff then came into communication with Mr. Lillie, president of the defendant company, who inspected the tannin solutions, and thought, and so stated, that the apparatus manufactured by his company would do the desired work. Plaintiff desired defendant to lend it one of its machines for experimental purposes, not only to see whether the machine would perform the desired work, but as well to learn whether its use would be consistent with the method of tanning employed by the company. Mr. Lillie declined to lend the machine, for the very obvious reason that, if not purchased, it would be returned without compensation, depreciated in value as a second-hand outfit. The conversations and negotiations be-

tween the parties resulted in the following agreement, which is pleaded in the complaint, and became, without doubt or dispute, the original contract between the parties:—

"Gentlemen:

"I beg hereby to affirm the proffer made by me verbally to Mr. Kullman this morning, which was:

"To sell to you the Lillie triple-effect evaporator with condenser (jet not surface) vacuum pump and engine referred to in our letter to you of the 13th inst. for the sum of four thousand and four hundred ($4,400.00) f. o. b. Philadelphia, payable as follows, viz.: $750.00 on acceptance of this proposition, $750.00 on shipment of the plant, and $2,900 ninety days after arrival of said shipment in San Francisco, you however to have the option of returning the apparatus (i. e., triple-effect, condenser, engine and vacuum pump, with all fittings and connections furnished therewith by us) at the end of the said ninety (90) days after the arrival of the shipment in San Francisco in lieu of making the said payment of $2,900.00. Shipment of same to be by rail to The Sugar Apparatus Mfg. Co., Philadelphia, Pa., freight prepaid by you.

" It is to be understood that the return of the apparatus by you will give you no claim upon any part of the $1,500.00 paid to us on account of it, and also that the apparatus is to be shipped, if returned to us, properly packed, and in as good condition as is consistent with sixty days use of it with average care.

"This triple effect is shown on the accompanying blue print 167A and will be delivered to you as shown on that print, with the addition of an engine for driving and circulating pumps and a vacuum pump and jet condenser in the place of the condenser shown on the print.

"With the usual supply of water to the condenser to maintain vacuum of 26 inches in the third effect, you will be able to evaporate three hundred (300) gallons of water per hour from your tannin solutions if the triple-effect is operated according to the written instructions which will be given to you in detail."

Some delay followed in shipping the machine and in placing it in plaintiff's tannery. When so placed it worked unsatisfactorily. An expert of defendant came to the coast,

labored upon the machine, and finally reported it as being in a satisfactory condition and doing the work; whereupon, and because of the delay and the past unsatisfactory performance of the machine, a written modification of the original contract was entered into between the parties as follows:—

"It is agreed between Kullman, Salz & Company and The Sugar Manufacturing Company that this agreement is to substitute one dated June 20th, 1900, regarding price, although all other conditions referring to the efficiency of apparatus, etc., are still to remain in force as per original contract.

"It is hereby agreed that in consideration of one thousand dollars ($1,000.00) paid by Kullman, Salz & Co., to The Sugar Apparatus Manufacturing Company, the receipt of which is hereby acknowledged, that the final and full payment of the triple-effect machine referred to in the original contract is to be $2,000, which when paid at the expiration of ninety days from this date, is to be payment in full for apparatus complete, including freight and all incidental expenses."

From this date plaintiff continued to operate the machine until, just before the limitation of the ninety days, which the parties seemed to agree was to run from June 14, 1901 (the date of the modification of the original agreement), plaintiff gave notice of rescission. Thereafter plaintiff commenced this action for rescission and the recovery of the portion of the purchase price which it had paid. Defendant answered, joining issue upon these matters, and by counterclaim sought a recovery of the unpaid portion of the purchase price.

The allegations of the complaint as to the breach of contract are as follows:—

"That the said apparatus mentioned in said written contract was warranted to be able to evaporate three hundred (300) gallons of water per hour, as specified therein, but that the apparatus delivered to said plaintiff under said contract was not able under the conditions specified, all of which were observed fully by plaintiff, to evaporate three hundred gallons of water under the conditions as specified in said contract, but failed very largely to accomplish the work required thereof.

"That plaintiff believed the representations of said defendant and entered into said contract solely by reason of said representations and the said warranty therein contained and said plaintiff was unable to ascertain the truth or falsity of said representations before entering into said contract. . . .

"That thereafter, and within due time, the said plaintiff notified said defendant that said apparatus and machine was not satisfactory in that the same did not evaporate three hundred gallons per hour as warranted and in fact fell very far short of said capacity, and that in other particulars said apparatus and machine did not fulfill the requirements specified in said contract and said plaintiff offered to return said apparatus to said defendant upon receiving a satisfactory machine or the amount theretofore paid by said plaintiff on account of the purchase price of said apparatus."

The principal contention between the parties upon this appeal turns upon the interpretation of the contract and the scope to be given to its terms. By appellant it is contended that the contract is clear, plain, and unambiguous; that the only warranty of defendant was that of the ability of the apparatus to evaporate three hundred gallons an hour under the conditions specified in the warranty—namely, if the apparatus "is operated according to the written instructions which will be given to you in detail"; that the only phrase in the contract, as to the interpretation of which, by any possibility, evidence should have been received, was the phrase "Lillie triple-effect evaporator"; and that when it was made to appear, as it does appear without question, that a Lillie triple-effect evaporator was in fact delivered to plaintiff, the need of taking further evidence upon this point was at an end.

By respondent it is contended that it has pleaded that plaintiff entered into the contract solely by reason of the "representations and the said warranty" contained in the written contract; that it was thus proper for it to show that the "Lillie triple-effect evaporator" was the trade name of a machine, which machine was held out to purchasers, under the defendant's book or catalogue, as possessing certain specified valuable properties and characteristics, as that it could be operated by exhaust steam without pressure, that it

was automatic in operation, and that it would not entrain, and therefore it was not necessary to use oil to prevent entrainment; that each of these representations were implied warranties running concurrently with the expressed warranty of capacity, and that plaintiff was, therefore, entitled to show a breach of any or all of them, even though they were not pleaded as warranties, but were pleaded merely as representations. Upon all of these matters the court adopted the contention of plaintiff and admitted evidence. It went even further than this, permitting plaintiff's manager to testify, as one of the representations made before the contract was entered into, that Mr. Lillie, after inspecting the plant and tannin solutions, told him "that he had an apparatus which would do that work and do it satisfactorily." The trial court in receiving this evidence did so under a sound declaration of the principles of law governing a written contract,—namely, that parol evidence may not be received to add to, detract from, or vary the terms of a written instrument, and that only when an ambiguity exists may parol evidence be employed to enable the court to arrive at what was the actual meaning expressed in the contract, and that to this end, and for this limited purpose, testimony of surrounding circumstances may be given. But, while thus enunciating the true principle of law, it opened the door to the introduction of any and all kinds of evidence, notwithstanding the writing between the parties, in the further declaration, "I think I had better hear this whole story, with all its possibilities and probabilities." Following its ruling admitting all of this evidence, the trial court further embodied its conclusions upon the effect of this evidence in findings such as this: "That at the time of entering into the original contract, the defendant, by its officers and agents, represented to said plaintiff that a Lillie evaporator was possessed of certain characteristics which made it a specially valuable machine, among others, to wit, that said style of evaporator could be operated with exhaust steam; that there was and would be practically no entrainment from such a machine; that it was automatic in operation, and that it did not require the use of oil to prevent entrainment. . . . That the said apparatus furnished by defendant did not possess the qualities and characteristics as repre-

sented by said defendant at the time of entering into the
agreement, in that the said apparatus was not automatic
in operation; nor could said apparatus be operated with
exhaust steam, and said apparatus in operation entrained
very heavily, and further required the use of an immense
quantity of oil to partially control said entrainment; and
said apparatus at no time evaporated three hundred gallons
of water per hour, but failed very largely to accomplish the
work required thereof, and plaintiff in operating said ma-
chine fully observed and conformed to the conditions
specified in said contract of June 20, 1900."

By its rulings and by these findings it is apparent that the
court adopted the theory of the plaintiff,—namely, that the
representations made by defendant "at the time of the enter-
ing into the original contract" constituted warranties upon
which plaintiff was entitled to rely.  In recognition of the
indisputable rule that where the oral negotiations of the
parties have ended in a complete written contract, that con-
tract is conclusively presumed to express the full meaning of
the parties and may not be modified by any antecedent repre-
sentations whatsoever, plaintiff has these rulings and findings
rest for support, not as did the trial court, upon the repre-
sentations made "at the time of entering into the original con-
tract," but, as has been above stated, upon what it contends
to have been the warranties implied by the use in the written
contract of the trade name "Lillie triple-effect evaporator."
And, in the same connection, plaintiff also calls to its aid the
implied warranties declared in sections 1767, 1769, 1770, and
1771 of the Civil Code.  Upon the first proposition, that the
mere use of a trade name will carry with it, under the cir-
cumstances here indicated, the warranties contended for, we
are referred to no authority, and the rule is quite the contrary.
Under certain circumstances the seller of personal property
does, with his sale, extend the warranties of the sections of the
Civil Code above referred to, and which in this connection will
hereafter be considered.  But the general principle of law, well
settled, is that where a complete written contract is made, oral
representations or warranties, and implied warranties, and all
oral negotiations are merged in the written contract, and by its
terms the parties must be bound.    (Civ. Code, sec. 1625;
Mechem on Sales, 1254; 30 Am. & Eng. Ency. of Law, 135;

*Johnson* v. *Powers,* 65 Cal. 179, [3 Pac. 625] ; *First Nat. Bank* v. *Hughes,* (Cal.) 46 Pac. 272; *Farkas* v. *Monk,* 119 Ga. 515, [46 S. E. 670] ; *McCormick Harvester Machine Co.* v. *Yocman,* 26 Ind. App. 415, [59 N. E. 1069] ; *Millett* v. *Marston,* 62 Me. 477; *Bullard* v. *Brewer,* 118 Ga. 918, [45 S. E. 711] ; *Naumberg* v. *Young,* 44 N. J. L. 331, [43 Am. Rep. 380] ; *Conant* v. *The National State Bank of Terra Haute,* 121 Ind. 323, [22 N. E. 250] ; *Union Selling Co.* v. *Jones,* 128 Fed. 672, [63 C. C. A. 224] ; *Seitz* v. *Brewers' Refrigerating Machine Co.,* 141 U. S. 510, [12 Sup. Ct. 46].)

But if, for the purpose of explaining the phrase "Lillie triple-effect evaporator" resort may be had to the circumstances surrounding the making of the contract, still less tenable does respondent's position become.    Those circumstances disclose, in accordance with the testimony of the plaintiff's manager, that "We (plaintiff) wanted an opportunity of demonstrating whether it would be advisable or consistent with our processes to use a concentrator of any character or of any type, and I asked him (Mr. Lillie) whether he would send me one of his apparatuses on trial."    Plaintiff desired to experiment, not alone to learn whether the machine was suitable, but whether, if suitable, it was desirable or advantageous to employ it in their manufacturing process.    Ninety days was considered long enough for the experiment.    It was reasonable that they should pay in case they decided not to accept the machine, since upon its return it would be second-hand and of less value.    Defendant agreed to furnish plaintiff with a designated type of machine of its own manufacture, precisely as, in the Seitz case above cited, the refrigerating company agreed in writing to supply Seitz with a machine of its own manufacture designated as "No. 2 size refrigerating machine."    The very fact that plaintiff was allowed the ninety days' time for experiment negatives the idea that defendant was warranting, or was called upon to warrant, or was expected to warrant the machine in any other than the one particular—that it would concentrate the tannin solutions by evaporating therefrom three hundred gallons per hour.    It is not until near the expiration of the ninety days that plaintiff makes complaint of the unsatisfactory working of the machine, and then only of its inability because of its small size, to evaporate the three hundred gallons per hour.    Mention in one of the let-

ters of plaintiff is made of the fact that the machine requires an excessive amount of oil to prevent entrainment, though this statement is coupled with the further one that "on this score we are not disposed to raise serious objection." Moreover, it is shown that at and previous to the time when plaintiff finally declared to defendant the unsuitableness of the machine, it was desiring to purchase a larger machine of the same Lillie type with the capacity of evaporating a thousand gallons per hour. So that, as well from the surrounding circumstances as from the letter of the law applied to this contract, it is clear that no warranty was extended by defendant other than that expressed as to the condensing capacity of the plant.

Nor can we perceive that respondent's position is bettered by the invocation of the sections of the Civil Code which are called to its aid. Section 1767 is to the effect merely that one who sells personal property, knowing that the buyer relies upon his advice or judgment, warrants to the buyer that the seller does not know the existence of any fact concerning the thing sold which would to his knowledge destroy the buyer's inducement to buy. No pleading and no evidence touch this section of the code. Section 1769 is to the effect that the seller of an article of his own manufacture warrants it free from any latent defects not disclosed to the buyer. Nothing in the pleadings or proof touches this section. Section 1770 is to the effect that one who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose. The pleadings are silent as to this, but, moreover, this was not such a sale as is contemplated by section 1770, but was a lease of the apparatus for experimental purposes, with an option to return at the expiration of ninety days under any circumstances, and with the privilege of completing the purchase upon designated terms if, after experiment, plaintiff should be satisfied to retain it. And that the machine in question was reasonably fit for the purpose is shown from the evidence of plaintiff itself, where it insisted upon its right to continue the use of the machine until another was installed. Section 1771 is to the effect that one who sells or agrees to sell merchandise inaccessible to the examination of the buyer, thereby warrants it sound and merchantable, a provision which, by no possibility, can be held applicable in the case at bar.

It follows from the foregoing that the court erred in admitting the evidence referred to, and still further erred by permitting the evidence so introduced to vary the express terms of a complete and unambiguous written contract.

But while this was error, it was not such error, under the facts here presented, as to necessitate a reversal of the judgment and a new trial. For the complaint sufficiently and explicitly charged on a breach of warranty and the court explicitly found in accordance with the allegation of the complaint. True, the evidence is conflicting; that on behalf of appellant establishing that the machine successfully evaporated in excess of three hundred gallons an hour in the tests made by its agent before the supplemental contract of June 14, 1901, was entered into, and that again in 1902, while the machine was still being used in plaintiff's business, it was once more tested by the agent of defendant and shown to fulfill the requirements of the warranty. But, upon the other hand, the evidence on behalf of plaintiff, which the court adopts in its finding, was that, while strictly conforming to the directions given by defendant for the use of the machine, it was incapable of doing the work warranted. This finding, then, of a breach of warranty is sufficient to sustain the judgment if plaintiff's offer of rescission was timely made. Upon this latter matter it is to be borne in mind that plaintiff's right of rescission was entirely independent of its contractual right to return the machine. The latter it could do within the stipulated time, regardless of any breach of warranty and without assigning any reason whatsoever for such return, paying merely for the use of the machine as contemplated by the contract. But the offer to rescind, which existed entirely independent of this right to return, could be founded only upon a substantial breach of the contract, which the court found to exist, and upon a timely offer to restore. It may not be said, under all the evidence in the case, that the offer of plaintiff in this regard was not timely. Plaintiff's testimony shows that it was diligently endeavoring to bring the machine up to the standard of efficiency warranted and the time which it consumed in this, though approximating ninety days from June 14th, does not lay it open to the charge of an unreasonable delay. True, much argument is advanced by appellant upon the conflicting evidence in the case, to the

general effect that plaintiff was not sincere either in its offer
to rescind or in its mode of rescission, but that it was endeav-
oring merely to obtain a larger type of defendant's machine
at an unconscionable advantage. But this, after all, is but
an argument addressed to the weight of the evidence, which,
in view of the adverse finding of the court, may not here be
considered.

For the foregoing reasons the order and judgment appealed
from are affirmed.

Lorigan, J., and McFarland, J., concurred.

Hearing in Bank denied.