[Civ. No. 6201. First Appellate District, Division One.—October 15, 1928.]

J. M. DA ROCHA, Respondent, v. G. H. CORSE, Jr., Appellant.

Resleure & Light and Resleure & Hill for Appellant.

F. Eldred Boland and Knight, Boland & Christin for Respondent.

PARKER, J., *pro tem.*—Plaintiff brought his action in two counts, seeking damages alleged to have been sustained by him from defendant's breach of contract. Plaintiff recovered on the first count and judgment was for defendant on count number two.

Defendant appeals from the judgment in favor of plaintiff on count one and plaintiff makes no appeal from that part of the judgment adverse to him. Therefore, throughout we will deal exclusively with the cause of action involved in this appeal, namely, count number one.

The complaint alleges that in December, 1924, plaintiff and defendant entered into a contract whereby defendant agreed to sell to plaintiff and plaintiff agreed to buy from defendant one hundred tons broken white glass bottles at nineteen dollars per ton, cost and freight delivered at Hongkong; that prior to the delivery of said merchandise plaintiff paid to defendant the sum of nineteen hundred dollars, and in addition thereto paid freight and insurance to Hongkong from San Francisco; that defendant delivered to plaintiff certain broken glass bottles of an inferior quality in that the same were a mixture of white bottle glass, as distinguished from broken white glass bottles, and white glass residue, with a percentage of powdered glass, to the damage of plaintiff in the sum of four hundred twenty and seventy-six one-hundredths dollars. The answer of defendant denied specifically the allegations of the complaint.

The court below found the allegations of the complaint to be true, and judgment was awarded plaintiff for the full amount prayed.

On this appeal the appellant presents two principal grounds for a reversal: First, it is his claim that the evidence is uncontradicted that he fully complied with his contract; second, even if it can be determined that there was a breach on his part, nevertheless plaintiff has not shown wherein any damage, actual or constructive, followed.

It appears that in December, 1923, the business relations between the parties commenced. There is no evidence as to what, if any, negotiations preceded the first sales, or whether those sales occurred in the nature of an ordinary "over the counter" transaction without written or other contract than the generally implied contract attached to all sales. From December 10, 1923, to and including October 4, 1924, defendant made eight shipments of merchandise to plaintiff, all of which were apparently satisfactory; at least no complaint was made concerning the same. In the invoices accompanying these shipments we find in six instances the goods described as "broken white glass bottles," and in the other two the description is "broken white bottle glass." Practically the whole contention here is that plaintiff ordered and paid for broken white glass bottles and received broken white bottle glass; that is, in so far as the claim of damages here made is concerned. By way of explana-

tion it may be here noted that the term "broken white glass bottles" means just what the words indicate; in other words, white glass that has been blown or manufactured into bottles and broken up. The term "broken white bottle glass" means white glass that has not been blown into bottles. The material in either case is exactly the same, of the same chemical composition, and each possessing the same qualities, chemically and otherwise.

The only contract between the parties appears from certain writings as evidenced by letters and cablegrams. On October 7, 1924, appellant offered to furnish respondent certain quantities of *broken white bottle glass*. After certain bargaining as to price the respondent on December 4, 1924, cabled appellant as follows: "We accept $19.30 50 short tons *broken white bottle glass* Feby. clearance, 50 tons March clearance."

It will be seen from the above that the contract was to buy and sell broken white bottle glass.

The court below stated that the only question before the court was whether the merchandise to be delivered should have been broken bottles or bottle glass, and this theory of the issues was affirmed by all counsel.

The theory of respondent here advanced is that irrespective of the written contract the buyer respondent had a right to rely upon the previous course of dealing, and that notwithstanding the use of the term broken bottle glass he had the legal right to demand broken glass bottles as had been theretofore shipped. There is nothing before us, nor was there anything presented in the court below, indicating the nature of the contract or the order or agreement under which the prior shipments had been made. If it is true that the commodities named are each of a distinct trade class it must be assumed that those dealing therein knew the classification. If, on the other hand, the terms were used interchangeably the difference would be one of quality only, and any representations as to the quality would be necessarily a matter of contract.

Respondent offered evidence to show that in the trade there is a recognized distinction between broken glass bottles and broken bottle glass, while appellant sought to show that both terms referred to one and the same thing. Accepting this as an issue in the case, we are bound by

the trial court's determination thereof, a conflict being apparent. Therefore we accept as a fact the distinction existing, and will treat the commodities as separate as though reference were being made to coal and ice.

From this standpoint it would result in an absurdity if one could argue that he had received seven or eight shipments of coal, and that thereafter upon a contract specifying ice he ought to again receive coal. The appellant further showed that broken bottle glass, conceding all that respondent claims, was not a worthless article or a thing without a commercial use and value. His evidence in this respect showed that it differed from broken glass bottles only in saleability in that the Chinese, the chief users thereof, were not equipped to use it as readily as the broken bottles, and for that reason there was a price differential of four dollars per ton in Hongkong. This condition was known for many years, according to respondent's contention.

With all of these facts, respondent nevertheless contracted for and received broken bottle glass, an inferior article of distinct grade and classification. His contention here amounts to no more than a claim then that his contract must have included a warranty separate and distinct from the written provisions thereof and resting upon prior dealings or upon the assumption. Such a warranty cannot be read into the contract that is before us. It might be that if it had been shown that the term "white bottle glass" had by a general custom and usage been understood as meaning broken glass bottles, the evidence of prior shipments would be material in support of the proof of custom. But the mere fact that it happened that broken bottles had been previously shipped stands here alone. For aught that appears in the record before us, the price may have been different and the order might have specifically referred to broken white bottles. It seems quite clear that, if plaintiff was familiar with the grades and classification, he should have specified the same in his contract. There is no question of fraud, mistake, or misrepresentation involved here; the issue is solely on the breach of contract, with the damages alleged to have ensued.

As indicated, there is no claim that broken bottle glass meant or was understood in the trade to mean broken

glass bottles, and in fact all of the case of plaintiff is to the effect that the two were in nowise identical. The plain terms of a contract cannot be varied by evidence of what one of the parties supposed it to mean (*Estate of Gurnsey*, 177 Cal. 211 [170 Pac. 402]). ■ It would be clearly beyond any recognized principle of law, in the absence of a claim of fraud or mistake, to permit a buyer to show that because in prior dealings with the seller he had purchased certain articles, a contract calling for an article of different class or grade was intended to describe the commodity originally purchased. It would in effect be inserting in the written contract a term not found therein and varying and contradicting the unambiguous terms thereof (*United Iron Works* v. *Outer Harbor Co.*, 168 Cal. 81 [141 Pac. 917]. See, also, *Germain Fruit Co.* v. *Armsby*, 153 Cal. 585 [196 Pac. 319]; *Kullman, Salz & Co.* v. *Sugar Apparatus Mfg. Co.*, 153 Cal. 725 [96 Pac. 369]). The doctrine of the cited cases is affirmed and approved in the more recent case of *Nimmo* v. *Fitzgerald*, 202 Cal. 565 [261 Pac. 1015].

■ Summing up, we find respondent in this situation: If there is no difference between broken white glass bottles and broken white bottle glass there was no breach of contract if he received either. If there is a recognized trade difference, then the terms of the contract prevail, and the contract is satisfied by the delivery of broken bottle glass. We conclude the contract was not breached.

Finally, while not necessary to go further, we find the evidence of damage intrinsically weak. The only testimony thereon was that of plaintiff, who placed the differential in Hongkong at four dollars per ton, predicating his estimate upon the fact that his buyers demanded a refund in that amount—incidentally this being at a time apparently after the American holidays, when broken bottles were more plentiful, at least at a time, according to the evidence, when the broken glass market was glutted.

Judgment reversed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 14, 1928.