[Civ. No. 1449.    Third Appellate District.—November 25, 1916.]

J. I. CASE THRESHING MACHINE COMPANY (a Corporation), Respondent, v. COPREN BROS. (a Corporation), et al., Appellants.

MORTGAGE — SALE OF PROPERTY UNDER POWER — RIGHT OF ACTION ON NOTE FOR DEFICIENCY.—A mortgagee of personal property is not prevented by the provisions of section 726 of the Code of Civil Procedure, which declares that there can be but one action for the recovery of any debt secured by a mortgage, from bringing and maintaining a personal action to recover the balance due on the notes whose payment the mortgage secured, by having made a sale of the property under the authorization of sale contained in the mortgage and crediting the proceeds of the sale to the mortgagor, as under such circumstances the note was not "secured" by mortgage at the time of the commencement of the action.

ID. — ACTION ON NOTES — PURCHASE PRICE OF ENGINE — WRITTEN CONTRACT—INADMISSIBILITY OF ORAL EVIDENCE.—In an action to recover an alleged balance due upon certain promissory notes executed as part of the purchase price of a traction engine, evidence

of oral representations made by the plaintiff before the execution of the notes concerning the capacity of the engine are properly excluded, where the order blank for the engine, which the defendants signed, expressly recited an acknowledgment by the purchasers that no promises, representations, or agreements had been made to or with them that were not contained in the order, and that salesmen, mechanics, and experts were not authorized to bind the vendor by any act, conduct, or statement.

Id.—Lack of Capacity of Engine—Proof Inadmissible.—In such an action evidence offered by the defendants that the engine would not develop a certain horse-power is properly excluded, where the only reference in the contract to horse-power was in the part thereof reciting the ordering and shipment to the defendants of a "one 30 horse-power simple engine traction, wood burning, and fixtures," and their answer failed to allege any rescission or offer to rescind the contract for breach of warranty.

Id.—Sale of Mortgaged Property—Conflict of Evidence—Condition Precedent to Recovery on Notes—Erroneous Refusal of Instruction.—In an action to recover an alleged balance due on certain promissory notes, whose payment was secured by a mortgage on personal property, after an alleged sale of the property under the power of sale contained in the mortgage and application of the proceeds of the sale on the notes, it is reversible error to refuse to instruct the jury at the request of the defendants that if they believed from the evidence that the plaintiff elected to sell the property at public auction at the time and place mentioned in the notices of sale posted by it, but did not so make the sale, their verdict should be for the defendants, where the evidence was in direct conflict as to whether there was any sale had at the time and place noticed.

APPEAL from a judgment of the Superior Court of Sierra County.   Stanley A. Smith, Judge.

The facts are stated in the opinion of the court.

John V. Copren, and W. I. Redding, for Appellants.

Dunn, White & Aiken, for Respondent.

CHIPMAN, P. J.—At the former hearing of this case, the opinion was written by Judge John F. Ellison, sitting temporarily in this court.   We now adopt it as correctly disposing of the questions raised by the appeal.

"Action to recover a judgment for money claimed to be due and unpaid upon three certain promissory notes.   The

complaint alleged that the notes were executed on July 5, 1912; that they were secured by a mortgage of even date on certain personal property; that the mortgage provided in the event of default in the payment of the notes the plaintiff could take possession of the mortgaged property and sell the same with or without notice, and after deducting the expense of the sale apply the balance on the notes secured by the mortgage; that the balance remaining unpaid on said notes after crediting the proceeds of such sale should at once become due and payable; that, acting under the terms and provisions of the mortgage, the plaintiff, upon default in the payment of the notes, and on June 22, 1914, took possession of and sold the mortgaged property for five hundred dollars and, after deducting twenty dollars expenses, credited $480 on the notes; that there had been paid on one note before that time $74.45, which, with the credit of $480, left a balance of principal due of $684.30, and judgment was asked for this amount and interest as provided in the notes. The court, at the conclusion of the taking of the testimony, instructed the jury to find a verdict for the plaintiff for the amount sued for, and it did so. This appeal is from the judgment following such verdict. The defendants filed a general and special demurrer to the complaint, which was overruled.

"1. Their position on the general demurrer may be stated as follows: Section 726 of the Code of Civil Procedure provides that there can be but one action for the recovery of any debt secured by a mortgage; that, upon default in payment of the notes, plaintiff had only one of two remedies; it could bring a foreclosure suit or it could proceed under the terms of the mortgage and sell the property; and that when it adopted the latter course, it elected to look to the property only for satisfaction of its debt; that a suit for a deficiency can only be maintained after the property has been sold under a judgment in a foreclosure suit.

"We do not think counsel's position is tenable. For purposes of demurrer, deeming all the allegations of the complaint to be true, it must be held that when this action was begun the debt was not secured by a mortgage. · The property that was security for it had been sold by the plaintiff and the defendants given credit therefor. It had been sold pursuant to defendants' written consent and authorization

contained in the mortgage. In making the sale the plaintiff may be said to have been acting as the defendants' agent. One object of the passage of section 726 of the Code of Civil Procedure was to compel one having a debt secured by a mortgage to exhaust his security and apply its value to the liquidation of the claim before proceeding to obtain a personal judgment as against his debtor. Many conditions may arise after a mortgage has been given rendering what was originally security for the debt valueless. In most cases, perhaps, it might be a correct statement of the law to say that the word 'secured,' as used in section 726, should be considered as used in the present tense, and that the section refers to a debt that, at the time suit is brought, is secured by a mortgage. The adoption of the above as a general rule of construction would be subject to exceptions in individual cases. Thus, perhaps, if one having a debt secured by a mortgage should cancel it of record, without the consent of the mortgagor, it might be held he could not bring a personal action. On the other hand, if such mortgage were canceled with the consent or at the request of the mortgagor, without any intention of canceling the indebtedness, or if the property, being personal, were all destroyed by fire, without fault of the mortgagee—in such cases the holder of the indebtedness would not be at all prevented by section 726 from bringing and maintaining a personal action for the amount due. So in this case, the property having been sold by the plaintiff acting under the written authorization of the defendants and having ceased to be security for any part of the balance due, the notes were not secured by a mortgage at the time the suit was brought, and section 726 has no application to the situation.

"2. The defendants set up in their answer as a defense to the action certain oral representations alleged to have been made by the plaintiff before, at the time of, and after the notes were executed. The court excluded all evidence offered to sustain this defense, and this ruling is assigned as error. To understand the ruling, a somewhat fuller statement of the facts of the case is necessary.

"It appears that the plaintiff is engaged in the business of making and selling various kinds of machinery. On June 5, 1912, defendants signed one of the plaintiff's order blanks, in and by which they ordered shipped to them at once 'one

30 horse-power simple engine traction, wood burning, and fixtures,' at the agreed price of $1,513.75, to be paid for— $275, cash upon delivery, and the execution of three notes (being the notes in suit) secured by a mortgage on the property sold. The property was delivered to the defendants on July 5, 1912, the cash paid, and the notes and mortgages executed.

"The answer alleged that, before and at the time of the purchase of the engine, defendants informed plaintiff they desired to purchase an engine for the purpose of pulling four wagons, each loaded with four cords of green wood, along and over the 'Verdi and Dog Valley' grade in Sierra County, and thereupon plaintiff stated and expressly warranted that said thirty horse-power engine had sufficient power to and would pull the four wagons loaded as above stated over said grade, and that said engine would develop thirty horse-power; that, relying solely upon said representations and express warranties, defendants purchased the property and paid the money and gave the notes in question; that all of said statements, representations, and warranties were wholly untrue; that the engine never developed sufficient power to pull *one* loaded wagon over the grade, and failed to develop thirty horse-power; that by reason of the above they were unable to use the engine for the purpose for which it was purchased and it was of no use to them, and by reason of these facts the consideration of the notes wholly failed.

"The contract for the purchase of the engine, while in the form of an order signed only by the defendants, became an executed contract when accepted by the plaintiff and the machinery delivered. It is complete in itself, and expressly provides, over the signatures of the defendants, 'the undersigned hereby acknowledge that no promises, representations or agreements have been made to or with me not herein contained'; and again, 'salesmen, mechanics and experts are not authorized to bind the Company by any act, conduct or statement.' The defendants, by the offered evidence were attempting by parol to add a warranty to those contained in the written contract, and we think, in view of settled principles of law and the explicit language of the contract, above quoted, the court correctly ruled that it could not be done.

"Section 1856 of the Code of Civil Procedure provides: 'When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing.' (Certain exceptions are added to the section that are not applicable to this case.)

"In *Germain Fruit Co.* v. *J. K. Armsby Co.*, 153 Cal. 585, [96 Pac. 319], it is said: 'Where the written sale contains no warranty or expresses the warranty that is given by the vendor, parol evidence is inadmissible to prove the existence of the warranty in the former case or to extend it in the latter.'

"In *Harrison* v. *McCormick*, 89 Cal. 327, 330, [23 Am. St. Rep. 469, 26 Pac. 830], it is said: 'The question whether a writing is upon its face a complete expression of the agreement of the parties is one of law for the court, and the rule which governs the court in its determination has been well stated as follows: ''If it imports on its face to be a complete expression of the whole agreement—that is, contains such language as imports a complete legal obligation—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed.'' '

"In *United Iron Works* v. *Outer Harbor Dock & Wharf Co.*, 168 Cal. 81, [141 Pac. 917], it is said: 'Appellant undertook by parol evidence of the ''surrounding circumstances'' to show that there was such a warranty given even if it were not expressly embodied in the written contract. The objections to the admission of this evidence were sustained, and this is the first one of the asserted errors, the contention being that under section 1647 of the Civil Code and section 1860 of the Code of Civil Procedure such evidence was clearly admissible. In this, however, appellant errs. ''These sections but enact the common-law rule. It is never within their contemplation that a contract reduced to writing and executed by the parties shall have anything added to it or taken away from it by such evidence of 'surrounding circum-

stances.' This rule of evidence is invoked and employed only in cases where upon the face of the contract itself there is doubt and the evidence is used to dispel that doubt, not by showing that the parties meant something other *than* what they said, but by showing what they meant *by* what they said.'' ' (Citing cases.)

"3. Permitting parties to file amendments to their pleadings during the progress of the trial is largely in the discretion of the court, and its action will not be disturbed unless the discretion appears to have been wrongly exercised. The refusal of the court to permit defendants to amend their answer by alleging that before signing the instrument they did not read it was not an abuse of discretion.

"4. The defendants alleged in their answer and offered to prove that the engine would not develop thirty horsepower. All this offered evidence was excluded by the trial court, and this is assigned as error. Was there a warranty that the engine had this capacity and power?

"This is somewhat a close question, but in view of the particular wording of the contract it must be held that the ruling was correct. The only reference in the entire contract to thirty horse-power is in the part of the contract above quoted wherein defendants ordered 'one 30 horse-power simple engine traction.' It sufficiently appears from the printed order blank that plaintiff was selling and perhaps manufacturing many different kinds of machines, such as grain separators, hay stackers, etc. Those on the blank not ordered by a purchaser had written in the blank the word 'none' to show definitely it was not ordered. In front of the particular machine ordered was written some word to designate that it was ordered and how many. In this case, in front of the words '30 horse-power simple engine' was written the word 'one' to designate that that engine had been bought and that one was bought. The court held that the words 'one 30 horse-power simple engine' were used to designate the machine bought and did not carry a warranty of the power of the engine.

"Closely following the part of the order above referred to is the following: 'Said machinery is furnished upon and subject to the following mutual and interdependent conditions, and none other, namely: It is warranted to be made of good material, and durable with good care, and to be capable of

doing more and better work than any other machine made of equal size and proportions, working under the same conditions on the same job, if properly operated by competent persons, with sufficient steam or horse-power, and the printed rules and directions of the manufacturers intelligently followed.' The above is the only warranty written in the order blank. It would seem to have been carefully drawn for the purpose of expressly excluding all other warranties. It contains no warranty as to the horse-power of the engine. The pleading did not allege any rescission or offer to rescind the contract, and we conclude the court did not err in excluding evidence as to the horse-power the engine would develop.

"5. The defendants requested the court to give the jury the following instruction: 'The court instructs the jury that if you believe from the evidence that the plaintiff elected to sell said engine at public auction at the time and place mentioned in the notices of sale posted by it, but did not so make said sale at public auction, then your verdict should be that the plaintiff is not entitled to recover in this action.' The court refused to give the instruction, and this is assigned as error.

"The record shows that, acting under the terms of the mortgage, the plaintiff took possession of the mortgaged property and gave notice, by posting and by mailing to the defendants, that it would sell it at public auction at Johnson's barn in Sierraville, Sierra County, on June 22, 1914, at 2 o'clock P. M. The witness Bloodworth testified that, acting for the plaintiff, he sold the property at public auction at the time and place stated in the notices to one Fred Cook for five hundred dollars. 'I accepted the bid and declared the machinery sold to' the plaintiff. This was the only testimony offered by the plaintiff on this point, and the witness gave no testimony of any other sale, either public or private, having been made. He also testified that five hundred dollars was all the property was worth. One of the defendants gave testimony to the effect that witness Bloodworth did not go to the Johnson barn until 3 o'clock, and that witness went with him and remained there until 4 o'clock; that up to that time no sale of the property had been made and it had not been offered for sale. Another defendant testified that he was in the immediate vicinity of the barn from 1:30 to 3 P. M.; that Bloodworth was not there; that he left the barn about that time and went up town and saw Bloodworth sitting on the hotel porch.

"If the jury had accepted the testimony of the defendants, then it would have been their duty to find that no sale of the property had been made. The plaintiff's witness did not pretend that a sale was made at any other time than at 2 o'clock P. M., and if the jury concluded his statement that he made it then was untrue, they would have been justified in finding that no sale had been made. If the plaintiff made a sale at some other time (as after 4 o'clock), or if at some time he made a private sale, the burden was his to prove it. The suggestion that there might have been a private sale is foreign to the issue. No such sale was either alleged or proved, and the asked instruction was applicable to the only testimony there was in the case and did not have to cover other contingencies concerning which there was no evidence.

"6. It was claimed by respondent at the trial, and is now claimed, that as the defendants would not have bid on the property and there were no other bidders, the defendants were not injured by what was not done, in view of the fact that they got a credit of five hundred dollars. Counsel states his position as follows: 'Under these circumstances, it was manifest, in view of the credit which they had received, that they were not prejudiced, no matter what character of sale was held,' and section 4½ of article VI of the constitution is also involved.

"We think the question of injury or no injury to the defendants is foreign to the discussion. The question of whether the property was sold or not cuts far deeper than error or injury. It goes to the foundation of the action and involves the question, Did the plaintiff at the time it brought this suit have any cause of action against the defendants for a personal judgment? It did if the property had been sold under the terms of the mortgage. If it had not been thus sold it did not, and this was a question for the jury to decide. Without first making a sale, the law would not permit plaintiff to give defendants credit for some amount, any amount it saw fit, and then bring suit for a personal judgment. Plaintiff realized that it was necessary to allege in its complaint a sale of the property in order to state a cause of action. It did so, and the allegation as to a sale was material to the statement of a cause of action and a finding on it, favorable to plaintiff, necessary to support a judgment. By refusing the

offered instruction the court withdrew this vital issue from the jury.''

A rehearing was granted upon the earnest request of respondent that further consideration be given to certain facts from which it is claimed to conclusively appear that appellants were not prejudiced by the refusal of the court to give the instruction referred to in the foregoing opinion, and hence the judgment should not be reversed. These facts are that the mortgage under which the alleged sale was held provided that the mortgagee on default might take possession of the mortgaged chattels and sell the same at public or private sale, with or without notice at the mortgagees' option; that the mortgagees did not desire to bid; that they testified that the property was without value and that they would not have bid anything therefor; that ''had the property been offered for sale and the mortgagees had bid the same in, it would have been no more nor less than a private sale, no matter in what manner the transfer was effected,'' and, finally, attention is called to an admission made by defendants' counsel at the trial in the discussion of the instruction that, ''there is no contention that the defendants were prejudiced by said sale.'' Upon this latter fact we quote from the record:

''The Court: If there was any showing that there would have been other bidders and that the defendants were injured thereby—

''Mr. Redding: There is no contention that the defendants were prejudiced by the said sale.

''The Court: I can't see that it would make any difference, Mr. Redding. There is no injury to the defendants; of course, if the defendants wanted to bid, I could see where an injury might be suffered by them, but there is no contention of that character.

''Mr. Redding: I wish to qualify that to the extent that there might have been other bidders.

''The Court: Would it not devolve upon the defendants to show that the sale was unfair?''

Respondent cites several of the cases in which section 4½ of article VI of the constitution has been held to justify the reviewing court in disregarding the error because the court was not of the opinion that the error complained of had resulted in a miscarriage of justice. See, for cases, note to the section in Treadwell's Annotated Constitution, page 313

(ed. 1916). The section forbids the setting aside of a judgment or granting a new trial, "in any case, on the ground of misdirection of the jury, or of-the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

Speaking of this section, the supreme court said in *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 554, [147 Pac. 238] : "It is no longer the case that injury is presumed from error; the injury must appear affirmatively to the mind of the court after the examination required, or from the nature of the error itself." The court also said: "Just what may be included in the phrase, 'miscarriage of justice,' must remain to be decided in each case as it is presented."

In *People* v. *Tomsky,* 20 Cal. App. 672, 683, [130 Pac. 184], Mr. Justice Hart, speaking for the court said: "The section is general in its language and terms, and, moreover, upon its face, very sweeping in its scope. It does not pretend to describe specifically the character of the errors coming within the purview of its language, or, by express language, to limit the right of the courts to determine and say that any error, whatever its nature, has not resulted in a miscarriage of justice. But it is, of course, very clear that the power vested in the courts by the section is not to be arbitrarily exercised either in the one direction or the other, but that the propriety or impropriety of the application of the provisions of the section must be determined, perhaps, in all cases, as much on the character of the record of the particular case as upon the character of the error itself."

Plaintiff's right of action, as was shown in the original opinion, depended, under the terms of the mortgage, upon there having been a sale either public or private. Plaintiff elected to proceed by a public sale and grounded its complaint on such sale. There was evidence tending to show that there was no public sale and there was no evidence of a private sale. Had the court submitted the case to the jury, they would have been justified in finding that there was no sale at all; that the credit of five hundred dollars on the notes was arbitrarily made and in utter disregard of the terms of the mortgage. It is true that defendants would not have

bid at the sale had there been a sale; it is true that in the opinion of plaintiff's agent the chattels were not worth more than five hundred dollars; it is true that one of the defendants testified that the machine was worthless. Still, defendants were entitled to have the sale made as advertised, since there may have been other bidders who would have given more than five hundred dollars for the property. Defendants' admissions must be considered in the light of their relations to the case. Their position was that so far as they were concerned, the machine was a failure and, for their uses, worthless. To have been bidders at the sale would have been inconsistent with the defense they were making. But plaintiff having elected to enforce its rights by public sale and having brought its action upon the assumption that there was such sale, there was an entire failure of proof. So, also, was there an entire failure of proof that any sale was made. We think it would be giving to section 4½ of article VI unwarranted scope to permit its application to such a state of facts as we have here. To do so we must, in effect, say that it is not necessary to state facts sufficient to constitute a cause of action, or, having stated a cause of action, it need not be supported by sufficient evidence.

The section was not intended to abrogate or dispense with rules of procedure and evidence. It would, in our opinion, effect a miscarriage of justice to sustain the ruling of the trial court upon the record before us.

The judgment is reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 22, 1917.