[Civ. No. 1819.   Third Appellate District.—August 2, 1918.]

## DE LAVAL DAIRY SUPPLY COMPANY (a Corporation), Respondent, v. FRED TALBOTT, Appellant.

CONTRACT — WARRANTY — WRITING—ORAL NEGOTIATIONS AND STIPULATIONS SUPERSEDED.—In an action on two promissory notes given for the balance of the purchase price of a gas engine under a contract in writing where the defense set up was a counterclaim for breach of an alleged warranty, not contained in the written contract, to the effect that the engine would perform certain work with the consumption of a certain quantity of fuel, and it appeared that the warranty in the written contract was one to the effect that the engine should be tested before leaving the factory; that parts proving defective in workmanship and material should be replaced free of charge; that written notice should be given by the purchaser to the vendor of any failure to fulfill the warranty, the vendor reserving the right to send a man to test the engine at the vendor's expense if defective in material or workmanship, and at the expense of the purchaser if the fault lay with the latter, and it appeared that the purchaser never gave the notice required by this provision of the contract, which also contained a provision that "no agreements, stipulations, or conditions, oral or otherwise, save those mentioned," would be recognized, the case was governed by

section 1625 of the Civil Code, which provides that "The execution of a contract in writing, whether the law requires it to be in writing or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

Id.—Findings and Judgment Supported by Evidence.—Evidence in such case examined and found to support the findings and judgment in favor of the plaintiff.

Appeal—Conflicting Evidence.—In case of a conflict of evidence, the decision of the trial court will not be interfered with where there is substantial evidence to support the decision.

APPEAL from a judgment of the Superior Court of Siskiyou County, and from an order denying a new trial. James F. Lodge, Judge.

The facts are stated in the opinion of the court.

B. K. Collier and Collier & McNamara, for Appellant.

C. J. Luttrell, for Respondent.

CHIPMAN, P. J.—This is an action upon two certain promissory notes, executed by defendant to plaintiff, both of which were dated June 30, 1914, one for two hundred dollars, due December 15, 1914, and the other for $175, due March 15, 1915, and both recited that they were given on account of the purchase price of a certain twenty horse-power Stickney gas engine sold and delivered by plaintiff to defendant. The notes also provided for reasonable attorneys' fees in case of suit brought to enforce collection. Included in the action was a claim for goods furnished amounting to $8.48.

In his answer defendant denied that said notes were made on June 30, 1914, but alleged that they were executed about October 18, 1914; admitted nonpayment. For a further defense, "and by way of counterclaim," defendant alleged that in May, 1913, he contracted with one Lloyd Collar, agent of plaintiff, to purchase a twenty horse-power Stickney gas engine for the sum of $750; "that before the making of said sale the said defendant caused the said agent of plaintiff to visit the mine where defendant was working and where the said engine was to be installed"; that defendant then and there informed said agent of all the facts surrounding the

situation of said work and that all of these facts became
known to plaintiff, who thereupon "agreed that it would
furnish to defendant a Stickney gas engine that would de-
velop twenty horse-power and would not hammer, and the
said plaintiff expressly warranted to said defendant that
plaintiff would furnish and install such engine, and he ex-
pressly warranted that the same would work in said altitude
and that the same would develop sufficient power to crush
said ores and that the same would run on a small amount of
oil, viz., one-half pint per horse-power per hour, all of which
this defendant relied upon." It is then alleged that said
engine would not and did not do the work that plaintiff
warranted it would do, setting forth in the answer with
much particularity wherein the said engine failed to meet
said warranty and mentioning the several defective parts of
said engine and its failure to develop more than fourteen
horse-power; that, on many occasions before the bring-
ing of this suit, defendant requested plaintiff "to fix the
said engine so that it would work" and to make good its
warranty, but plaintiff neglected and refused to do so;
that in January, February, and June, 1914, defendant
offered to return the said engine to plaintiff; that, "under the
first agreement with plaintiff herein, he executed to the plain-
tiff two promissory notes on July 30, 1913, each for the sum
of $375, and that the two hundred dollar note and the $175
note set out in plaintiff's complaint were given in October,
1914, for the second $375 note that defendant had executed
to plaintiff in 1913." It is then alleged that defendant paid
the first $375 note and interest; that he paid out for freight
on said engine $86.38, and hauling the same to the defend-
ant's mine, $45. Defendant also claims damages for various
amounts, namely, $53 for storage of said engine; for lost time,
$816; for the purchase and operating of a substitute engine
and for certain necessary work, $1,850. These last two items
went out of the answer on demurrer.

The cause was tried by the court without a jury and plain-
tiff had findings and judgment in its favor. Defendant
appeals from the judgment and from the order denying his
motion for a new trial.

The execution and delivery of the two promissory notes
mentioned in the complaint are not disputed; they were, how-
ever, not delivered at the date they bore, but were delivered

October 18, 1914, and the complaint was amended to conform to the evidence; and, as alleged by defendant in his answer, these two notes were given to take the place of the second of the notes for $375, falling due in December, 1914, as the evidence showed, for defendant's accommodation and to extend the time of payment.

In point of fact, the defense to the action depended entirely upon defendant's maintaining his alleged counterclaim.

Defendant calls attention to certain alleged errors of law committed by the court. It is claimed that it was error to sustain plaintiff's demurrer to that part of the answer alleging lost time, etc., by reason of the defect in the said engine by which he was precluded from making proof of his resulting damages; that it was error to sustain an objection to the question put to defendant as a witness, "Were you then compelled to go out and purchase another engine?" as the result of the failure of said engine to do its guaranteed work; that it was error to strike out defendant's testimony to the effect that the said engine "was not fit for the purpose of operating the machinery defendant then had on the mine." Obviously, if defendant failed to establish the alleged warranty and failed to prove, to the satisfaction of the court and by a preponderance of the evidence, that the said engine was defective in respect of the particulars pointed out by him and failed to show that the said engine would not and did not develop twenty horse-power—in short, if he failed to establish the facts constituting his alleged counterclaim, the errors complained of became immaterial and nonprejudicial.

Defendant was permitted to testify, and did testify, to the representations by plaintiff's agent made to him when negotiating for the purchase of the said engine, which were, as he testified, substantially as set out in his answer. He testified also to the existence of the numerous defects in the engine as alleged in his answer; that by reason of these defects he was unable to keep the engine running and that he could not at any time make it develop more than fourteen horse-power and that it was incapable of doing the work intended to be done by it which said agent guaranteed it would do. His testimony tended to show that the engine was worthless for his purposes and would not do his work; that he had frequently so informed plaintiff and requested plaintiff to take the engine away. Defendant's testimony was in some degree

corroborated by that of other witnesses who had seen the engine in operation at different times. Neither defendant nor any of his corroborating witnesses was familiar with the construction and operation of gas engines, nor could either be said to have been in any sense an expert or competent to express expert opinion upon the capacity or working condition of this engine. It appeared that defendant was attempting to run two stamps or ore-crushing mills with this engine and doing the work without any assistance; that he had himself installed the mills, though not a millwright or familiar with machinery; that the foundations of these mills were not as secure as they should be and the alignment of the shafts and the setting of other parts of the machinery were such as to waste power; defendant admitted that he did not know what horse-power was required efficiently to operate his mills; that he never had tested the horse-power of the gas engine sold to him and did not know how to make such test; that he had never before attempted to run a gas engine, had never taken one apart or put one together. He testified: "Q. And really, up to the time that you acquired this engine that is in controversy here, you really never knew anything about these gas engines, did you? A. No." Such was the character of the testimony submitted in support of defendant's counterclaim.

It appeared from the evidence submitted by plaintiff in reply to defendant's evidence in support of his counterclaim that, subsequently to the negotiation between defendant and plaintiff's agent to which defendant testified, defendant signed an order on plaintiff for a twenty horse-power Stickney engine. This document contains the terms and conditions upon which the purchase and sale were made, and sets forth specifically the warranty given by plaintiff in making the sale and under which defendant received and used the engine. This was that plaintiff "warrants that each Stickney or St. Paul engine purchased under this contract shall be tested before leaving the factory and shall have developed the full rated horse-power. They also warrant the engine to be made of good material. Parts proving defective in workmanship and material (except batteries) will be replaced for the period of one year f. o. b. factory, free of charge." Among the conditions found in this contract are the following: "In the event of any engine's alleged failure to fulfill

the above warranty, written notice shall be given the De Laval Dairy Supply Co., stating wherein it failed to fulfill warranty, and the De Laval Dairy Supply Co., reserves the right to send a man to test the same and if found defective in material or workmanship'' the company will pay all expenses of the test, ''but if the failure lies with the fault of operating the engine, then the purchaser agrees to pay such expense.'' The contract contained the following provision: ''No agreements, stipulations or conditions, oral or otherwise, save those mentioned in this order, will be recognized, and it is agreed that the original order is held by the De Laval Dairy Supply Co. and shall govern settlement.''

The principle of law applicable is found in section 1625 of the Civil Code: ''The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.'' We had occasion to apply the rule in the somewhat similar case of *J. I. Case Threshing Machine Co.* v. *Copren Bros.*, 32 Cal. App. 194, [162 Pac. 647], which may be consulted for a discussion of the question. The contract here involved by its terms ''imports on its face to be a complete expression of the whole agreement—that is, contains such language as imports a complete legal obligation''—and, as was said in *Harrison* v. *McCormick*, 89 Cal. 327, [23 Am. St. Rep. 469, 26 Pac. 830], ''it will be presumed that the parties introduced into it every material item and term; and parol evidence will not be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed.''

Defendant at no time complied with the provision in the contract that he was to give notice in writing of any failure to fulfill the warranty, but he did notify plaintiff that the engine was not satisfactory and that he was unable to make it do his work. Plaintiff sent its expert engineer, Mr. Workman, and its general superintendent, Mr. Zirbel, to inspect the engine and report its condition. They arrived at defendant's mine on June 18, 1914. Mr. Workman testified that he had had seventeen years' experience with gas engines and was perfectly familiar with their construction and operation. His qualification to testify knowingly was not disputed. Mr. Zirbel sufficiently qualified himself to testify as an expert.

Approaching the mine they heard the engine "shooting" and apparently running all right and on reaching the mine witness Workman testified that it was "running both the stamp and the Lane mill." He testified that defendant explained to him his troubles. Witness testified: "We told him we were going to blank the head end of the piston connecting rod and the main base, and this would shove the piston closer to the compression head. . . . Q. What was that for? A. To take care of the altitude," which, he explained, affected the air pressure. They stayed there most of the day, the engine running all right, and on the next day made the adjustment proposed. He testified that they tested the power of the engine by the recognized method and at different speeds and found that "at the speed she was running we would develop twenty-two horse-power." He weakened the springs of the carbureter—"the springs were a little too stiff for the high altitude. The igniter, we had no trouble with that whatever." They remained at Yreka five or six days, visiting the mine, twelve miles distant, every day, and, with the exception of a casting breaking, which was replaced the next day, the engine worked all right without more than temporary interruption. Workman's testimony was that there was nothing the matter with the engine and that it developed the full twenty horse-power guaranteed. His testimony was corroborated by that of witness Zirbel. Both of these witnesses testified to the insecure foundations of defendant's mills and the defective alignment of shafting, which, in their opinion, resulted in a loss of power. The evidence was that defendant had paid the first note of $375, which fell due in September, 1913. It appeared that he executed the two notes in question in October, 1914, in lieu of the second $375 note. It also appeared that on June 30, 1914, defendant wrote to plaintiff as follows:

"I have tryed the engine 5 day and am satisfied with it now so if you will send the old note to your attorney to Yrek I will go in about the 16 or 18 of July and will draw new note to be made in toô payments Dec. 15–1914, $200.00, March 15–1915, $175.00."

"Yours truly,

"Fred Talbott."

These were the two notes which later, October 18, 1914, were signed by him and are now in suit.

. Without pursuing the evidence further, it is quite apparent that the court was justified in its findings and in its judgment. We are unable to discover any just ground upon which defendant can claim error. Having expressed his satisfaction with the engine in a letter to plaintiff after a trial; having paid one of the notes several months after the purchase without objection, and having executed the notes in question more than a year after he accepted the engine without objection, it would seem rather late now to urge a right to rescind or to claim want of consideration. Upon the essential facts the evidence was conflicting, and as there was sufficient substantial evidence to support the findings, we cannot interfere with the court's decision.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.