[Civ. No. 1925.   Third Appellate District.—December 20, 1919.]

J. I. CASE THRESHING MACHINE COMPANY (a Corporation), Respondent, v. COPREN BROS. (a Copartnership), et al., Appellants.

[1] PLEADING—ACTION TO RECOVER ON NOTES—AMENDMENT TO FORE-CLOSE MORTGAGE—CHANGE OF REMEDY.—The amendment of a complaint changing the nature of the action from one at law for the recovery of the balance due on certain promissory notes given in payment of a traction engine to a suit in equity to foreclose a mortgage on such engine given as security for the payment of such notes does not change the causes of action set forth in the original complaint, but merely changes the remedy.

[2] Id.—Election of Remedies—Estoppel.—The fact that the plaintiff took possession of the mortgaged property and undertook to sell the same under the provision of the mortgage authorizing it to take that course in case of a default in the payment of the notes, and then commenced an action at law for the deficiency, did not estop it from thereafter amending its complaint and suing in equity to foreclose the mortgage on such property, the attempted sale pursuant to the provisions of the mortgage not having been effected and the original action not having been prosecuted to final judgment.

[3] Id.—Capacity of Corporation — Estoppel of Mortgagor to Deny.—A mortgagor of property who has dealt with the mortgagee as a corporation, and received from it the consideration of the mortgage note, is estopped from denying its corporate capacity in an action by the corporation to foreclose the mortgage.

[4] Id.—Action to Foreclose Mortgage—Right to Jury Trial.—A proceeding or action instituted for the purpose of foreclosing a mortgage, either on real or personal property, involves an equitable remedy, and a jury is allowable only as a matter of grace and not of right.

[5] Sales—Warranty—Fraud—Failure to Rescind Contract—Action to Foreclose Mortgage—Evidence.—Where a contract for the sale of a traction engine contained no warranty that the engine would be of a given horse-power, or would in its operation develop that power, the only warranty contained in the order blank for the engine being that it would be made of good material "and durable with care, and be capable of doing more and better work than any other machine made of equal size and proportions, working under the same conditions on the same job, if properly operated by competent persons," the court, in an action to foreclose a mortgage on such engine given as security for the payment therefor, properly struck out the defendants' evidence offered to prove an alleged oral warranty and alleged fraudulent representations made by the plaintiff's agent as to the horse-power of the engine and its ability to perform certain specified service, the answer of the defendants not having alleged any rescission or offer to rescind the contract.

2. Bringing suit not prosecuted to judgment as conclusive election of remedies, notes, 34 L. R. A. (N. S.) 309; L. R. A. 1917D, 657.

3. Estoppel of defendant in action by corporation to deny corporate existence, note, Ann. Cas. 1914C, 1250; what names import corporation within rule, note, 5 A. L. R. 1580.

[6] ID.—KNOWLEDGE OF DEFECTS—RETENTION OF ENGINE—FAILURE TO
GIVE NOTICE—WAIVER—ESTOPPEL.—Alleged fraud and misrepre-
sentation as to the capacity of a traction engine is waived, and
an estoppel to assert fraud is created, where the purchasers, with
knowledge of the failure of the engine to measure up to alleged
representations and warranties, retain the engine and make no
complaint for over four months, at which time they request an
extension of time of payment, whereas the contract of sale gives
them ten days within which to test the engine to ascertain if it
meets the terms of the warranty contained therein and further
provides, "Failure to so make such trial or to give such notice
in any respect, shall be conclusive evidence of due fulfillment of
warranty on the part of said company and that the machinery is
satisfactory to the purchasers, and the company shall be released
from all liability under the warranty."

APPEAL from a judgment of the Superior Court of
Sierra County. Stanley A. Smith, Judge. Affirmed.

The facts are stated in the opinion of the court.

John V. Copren and W. I. Redding for Appellants.

Dunn, White & Aiken for Respondent.

HART, J.—The action was by plaintiff to recover an al-
leged balance due upon three certain promissory notes, exe-
cuted by defendants to plaintiff as part payment of the
purchase price of a certain thirty horse-power traction engine
sold by plaintiff to defendants, and to have foreclosed a
certain chattel mortgage on said engine given to secure the
payment of said promissory notes. From a judgment in
favor of plaintiff, defendants prosecute this appeal.

This case has been before us twice before. The first
appeal was from a judgment in favor of plaintiff, which
judgment, on November 25, 1916, was reversed. (*J. I.
Case Threshing Mach. Co.* v. *Copren Bros.,* 32 Cal.
App. 194, [162 Pac. 647].) In the opinion therein will
be found a full statement of the facts of the case. The
second appeal was from an order changing the place of trial
from Sierra County to Plumas County, and we reversed

6. Waiver of fraud generally, note, 67 L. R. A. 705; by completing
executory contract for sale of personal property after discovering fraud,
note, 8 L. R. A. (N. S.) 452.

the order. (*J. I. Case Threshing Mach. Co.* v. *Copren Bros.,* 35 Cal. App. 70, [169 Pac. 443].)

The original complaint in the action was filed September 11, 1914, and the prayer of said complaint was for judgment in the sum of $900.99, the amount of the principal and interest due on said notes on June 22, 1914. The nature of the action, as originally brought, and the contents of the original complaint, may be given here as they are briefly stated in the opinion on the former appeal of this case (32 Cal. App. 194, [162 Pac. 647]), as follows:

"Action to recover a judgment for money claimed to be due and unpaid upon three certain promissory notes. The complaint alleged that the notes were executed on July 5, 1912; that they were secured by a mortgage of even date on certain personal property; that the mortgage provided in the event of default in the payment of the notes the plaintiff could take possession of the mortgaged property and sell the same with or without notice, and after deducting the expense of the sale apply the balance on the notes secured by the mortgage; that the balance remaining unpaid on said notes after crediting the proceeds of such sale should at once become due and payable; that, acting under the terms and provisions of the mortgage, the defendant, upon default in the payment of the notes, and on June 22, 1914, took possession of and sold the mortgaged property for five hundred dollars, and, after deducting twenty dollars expenses, credited $480 on the notes; that there had been paid on one note before that time $74.45, which, with the credit of $480, left a balance of principal due of $684.30, and judgment was asked for this amount and interest as provided in the notes. The court, at the conclusion of the taking of the testimony, instructed the jury to find a verdict for the plaintiff for the amount sued for, and it did so. This appeal is from the judgment following such verdict. The defendants filed a general and special demurrer to the complaint, which was overruled."

On a rehearing of the case, this court said, among other things: "But plaintiff having elected to enforce its rights by public sale and having brought its action upon the assumption that there was such a sale, there was an entire failure of proof. So, also, was there an entire failure of proof that any sale was made."

On May 4, 1918, plaintiff served a notice of motion for leave to file an amended complaint. The motion was opposed by defendants on several different and distinct grounds, some of which will hereafter be given special attention herein, since they involve the principal points upon which a reversal of the judgment is asked. After hearing the motion, the court granted plaintiff leave to file the proposed amended complaint, and the same was filed on June 3, 1918. Defendants demurred to the amended complaint and, the demurrer having been overruled, filed an amended answer.

[1] The amended complaint changed the nature of the action from that of one at law for the recovery of the balance due on the promissory notes given by defendants to plaintiff to that of a suit in equity to foreclose the mortgage given by defendants to plaintiff on the engine sold to the former by the latter to secure the payment of the notes in suit.

The amended complaint is in three counts, in two of which it is alleged that no payment has been made upon the notes and that the principal of each of said notes and the interest are now due. In the other count credit is given on the note for the sum of $74.45.

The grounds of the opposition by the defendants to the order permitting the plaintiff to file the amended complaint which are principally urged here as those upon which insistence for a reversal of the judgment is predicated are: 1. That the amended complaint sets up entirely different and distinct causes of action from those set up in the original complaint, and that said causes of action are barred under the terms of section 337 of the Code of Civil Procedure; 2. That the plaintiff, by the mortgage in question, was expressly given two different, distinct, and inconsistent remedies, by either of which it was at liberty to enforce payment of the promissory notes in suit, that it was, therefore, put to its election as to which of said remedies it would adopt, and that having, in the first instance, elected to adopt and pursue one of the remedies, it waived the right to employ the other remedy for the enforcement of its demands, to wit, by foreclosure of the mortgage, and is, therefore, now estopped from invoking that remedy.

1. We cannot concur in the view that the effect of the amendment of plaintiff's pleading in the particular mentioned was to state therein causes of action different from those set up in the original complaint. Indeed, to our minds it is obvious that the amendment had no such effect. The complaint, as amended, proceeds upon precisely the same *causes* of action or seeks the establishment of precisely the same rights as those which were claimed by or asserted in the original complaint. The amended complaint does not change the character of the obligations sought to be enforced, but merely changes the *remedy* by which it is sought to enforce the obligations, and, therefore, does not change the causes of action set forth in the original complaint. (*Frost* v. *Witter*, 132 Cal. 421, [84 Am. St. Rep. 53, 64 Pac. 705].) In the case just named, the complaint in an action on a promissory note was filed two days before the time at which action on the obligation would have become barred by the provisions of section 337 of the Code of Civil Procedure. Some six days after the complaint was filed, and four days after suit on the obligation would have been barred, an amended complaint was filed, and, in addition to the matter set up in the original complaint, it alleged that the note was secured by a mortgage of even date with the note, and declared, also, upon the mortgage. One G. W. Witter was also made by the amended complaint a party to the action as claiming some interest in the mortgaged premises. The trial court decreed a foreclosure of the mortgage, and on appeal it was argued, as it is here, that there had been a change effected in the cause of action by the amended complaint and that the action, as made by the latter pleading, was barred under the section of the code above named. Replying to that argument, the supreme court said, quoting the syllabus: "An amendment of the complaint in an action upon a promissory note, so as to set up a mortgage made by the defendant, which is an incident to the note, and to seek its foreclosure, is permissible. It is not a departure from the original cause of action, but merely cures a statutory defect in the complaint, and gives the plaintiff an additional remedy to enforce the obligation of the note against the defendant." This is decisive of the point now under consideration. It may be added, however, that it is quite obvious that the

plaintiff could not have established a case under the original complaint. **[2]** As seen, it took possession of the mortgaged property and undertook to sell the same under the provision of the mortgage authorizing it to take that course in case of a default in the payment of the notes, or any default by the defendants in that particular. As above shown, this court held, on appeal, that there was no public sale of the property—that is, that there was an entire failure of proof of a sale. Manifestly, had the plaintiff gone to trial after the judgment of this court upon the original complaint, it would, of course, have failed to prove that a sale had taken place. Upon the theory upon which it made its case by the original complaint, it would have been but a futile or idle act to go on with the trial of the action. Of course, by these observations we are not to be understood as intimating that a party may by amendment so change his complaint as to effect a departure from the cause of action originally stated therein.

2. We do not think this is a case where the doctrine of election between remedies applies. The cases where that principle has been successfully invoked are *generally* where a party, having two different and distinct remedies available to him for the enforcement of a single right or obligation, has adopted one of the remedies and through it has pressed his action to final judgment, and, finding that he has failed to adopt the course or the remedy which would have rendered the execution of his judgment the more effectual, attempts to invoke the other remedy. Where, for illustration, the holder or owner of a promissory note, which is secured by a mortgage, elects to proceed at law and so sues upon the note, without relying upon the security of his mortgage, and has obtained judgment which has become final, it has been held that, in such case, the plaintiff waives his security and cannot go into a court of equity and secure relief by way of a foreclosure. This proposition is an essential corollary of one of the underlying or fundamental concepts of the reformed procedure, to wit, the prevention of a multiplicity of suits. (*Ould* v. *Stoddard,* 54 Cal. 613.)

The case of *Parke & Lacy Co.* v. *White R. L. Co.,* 101 Cal. 37, [35 Pac. 442] (cited by appellants here), was just such a case as the one first above hypothetically stated. It

involved an action to recover certain personal property or its value, said property having been sold or leased to the defendant by the plaintiff under a written instrument characterizing itself as a "lease," providing that the property should be transferred to the possession of the defendant, that the latter for the use of the property should pay the lessee the sum of $3,064, payable in full on a day named in the future, and that the property should become the property of the lessees if they paid the full amount stated by the time designated, or, if said lessees failed to pay said amount at the time to which they were limited by the agreement for that purpose, or failed to comply with any other of the covenants of the "lease," they should lose all and any interest in said property and the lease become void and of no effect. It appears that at the time of the execution of the so-called lease, a mortgage was given by one Hilton, upon certain real property, to secure, with another obligation, the money to be paid by the defendants for the property in question. Prior to the commencement of the action involved in the appeal in that case, the plaintiff brought an action on the note and mortgage, and therein the court gave plaintiff judgment for the amount of the indebtedness due under the alleged lease, but denied a foreclosure of the mortgage. The supreme court held that the instrument involving the transfer of the possession of the property to defendants was not a lease, but either a completed or conditional sale, in either of which cases the plaintiff could not prevail, since, if it was a completed sale, it should have sued for the recovery of the purchase price, but, if a conditional sale, it should have rescinded the agreement and sued for the recovery back of the property. The plaintiff, of course, could not claim the right both to the property and to the purchase price, "and," proceeded the court, "an action brought to recover the purchase price, as was done in this case, is a ratification of the sale."

This case, it is very clear, does not come within the above case.

The case of *San Bernardino Invest. Co.* v. *Merrill*, 108 Cal. 490, [41 Pac. 487], also cited by the appellants here upon the doctrine of election, aside from a few general observations as to the nature of that doctrine and the oc-

casions on which it may be invoked, has absolutely no application to the case now before us.

We conclude that the court below made no mistake in allowing the plaintiff to amend its complaint (*Crittenden* v. *St. Hill*, 34 Cal. App. 107, [166 Pac. 1016]), nor do we think it is shown that there was an abuse of judicial discretion in doing so. To the contrary, under the peculiar circumstances of the situation, the allowance of the amendment was eminently proper as in the interest of justice. (*Alden* v. *Mayfield*, 33 Cal. App. 684, 693, 694, [166 Pac. 377].)

[3] 3. It is next contended that the corporate capacity of the plaintiff was not properly shown. It is a well-settled rule that "a mortgagor of property who has dealt with the mortgagee as a corporation, and received from it the consideration of the mortgage note, is estopped from denying its corporate capacity in an action by the corporation to foreclose the mortgage." (Syllabus in *Bank of Shasta* v. *Boyd*, 99 Cal. 604, [34 Pac. 337].) The following cases and authorities also declare the rule to be as thus stated: *Grangers' etc. Assn.* v. *Clark*, 67 Cal. 634, [8 Pac. 445]; *Oregonian Ry. etc. Co.* v. *Oregon Ry. etc. Co.*, 10 Sawy. 464, 22 Fed. 245; *Cowell* v. *Springs Co.*, 100 U. S. 61, [25 L. Ed. 547, see, also, Rose's U. S. Notes]; *Close* v. *Greenwood Cemetery*, 107 U. S. 466, [27 L. Ed. 408, 2 Sup. Ct. Rep. 267]; Bigelow on Estoppel, pp. 527–529; Morawetz on Private Corporations, sec. 750; Spelling on Corporations, sec. 44; *Raphael Weill & Co.* v. *Crittenden*, 139 Cal. 488, [73 Pac. 238]; *Fresno Canal & Irr. Co.* v. *Warren*, 72 Cal. 379, [14 Pac. 37]; *Camp* v. *Land*, 122 Cal. 167, [54 Pac. 839].

That the defendants dealt with the plaintiff as a corporation is indubitably shown by the fact that the notes and the mortgage which they executed in favor of plaintiff and upon which this action is founded and the affidavit attached to the mortgage were signed and presumably read by them.

[4] 4. The court made no error in denying the application of the defendants for a trial by jury. A proceeding or action instituted for the purpose of foreclosing a mortgage, either on real or personal property, involves an equitable remedy, and it is about as elementary a proposition as is to be found in the whole body of the law that juries are allowable in the equity courts, if at all, only

as a matter of grace and not of right. Where a jury is invoked and is allowed in an equity case, it is merely because the chancellor desires its assistance in the solution of the questions of fact at issue, but the function or office of the jury in such a case is in nature and scope advisory only, and the jury's conclusion or verdict upon the facts may be disregarded, even arbitrarily, by the chancellor, and findings of fact may be made by him contradictory to those implied from the verdict, and if there be testimony supporting the findings by the judge, the decree will stand immune from disturbance, so far as the findings are concerned. (*Mitchell* v. *Gray,* 9 Cal. App. 423, 429, 430, [97 Pac. 160] ; *Downing* v. *La Du,* 82 Cal. 471, 473, [23 Pac. 202] ; *Carroll* v. *Daniel,* 95 N. Y. 254; *Van Valkenburgh* v. *Oldham,* 12 Cal. App. 572, 579, [108 Pac. 42].)

**[5]** 5. It is next contended that the court erred in not permitting the defendants to prove an alleged oral warranty made by the plaintiff's agent before the execution of the written order or contract of sale as to the capacity or horse-power of the tractor and also by not allowing testimony in support of the charge (introduced for the first time in this case through the amended answer) that the plaintiff's agent fraudulently and with intent to deceive and defraud the defendants made false representations to the defendants as to the character, quality, and capacity of the engine and its ability to perform certain specified service, and by which representations the latter, so it is alleged, were solely influenced and induced to enter into the contract of sale.

The defendants, on the close of plaintiff's case, proceeded to introduce testimony in support of the averments of their answer as to the alleged oral warranty and the alleged fraudulent representations by which they were induced to enter into the contract of sale, whereupon counsel for plaintiff objected to any testimony addressed to those matters of defense, but suggested that the court overrule the objections, which were based upon the usual general and also certain special grounds, and so allow the testimony to go in, subject to the objections made against it and to a motion by plaintiff to strike it out after it was all before the court. With this understanding, testimony in support of the special defenses referred to was admitted, but was later

stricken out on motion. It is now urged that the ruling of the court on this motion was not only erroneous but highly prejudicial to the rights of the defendants in the trial of the action, as certainly it would be if it had been offered in support of proper issues presented by the pleading of the defendants.

But there are several ready answers to the contention that the action of the court in striking from the record the testimony mentioned was erroneous.

This court held, in its opinion on the former appeal of this case (32 Cal. App. 194, 200, [162 Pac. 647, 650]), that the contract in question contained no warranty that the engine was of thirty horse-power, or would, in its operation, develop that power; that the only warranty written in the order blank for the engine was that it would be made of good material, "and durable with care, and be capable of doing more and better work than any other machine made of equal size and proportions, working under the same conditions on the same job, if properly operated by competent persons, with competent steam or horse-power, and the printed rules and directions of the manufacturer, intelligently followed." Acting Justice Ellison, who wrote the opinion in that case, further said therein: "It [the order for the machinery] would seem to have been carefully drawn for the purpose of expressly excluding all other warranties. It contains no warranty as to the horse-power of the engine. The pleading [answer of defendants] did not allege any rescission or offer to rescind the contract, and we conclude the court did not err in excluding evidence as to the horse-power the engine would develop."

The decision in that case upon the question whether the order contained a warranty that the engine was of a certain capacity or horse-power embodies the law of the case as to that question and is controlling on this appeal, notwithstanding that the plaintiff was permitted to amend its complaint and so set up some additional facts. (*Weller* v. *Brown*, 25 Cal. App. 216, [143 Pac. 251]; *Heidt* v. *Minor*, 113 Cal. 385, [45 Pac. 700]; *Wallace* v. *Sisson*, 114 Cal. 42, [45 Pac. 1000]; *People* v. *Hamilton*, 103 Cal. 488, [37 Pac. 627]; *Allen* v. *Bryant*, 155 Cal. 256, [100 Pac. 704].) It follows that the effect of the testimony stricken out by the court would have been, if it had been allowed to

stand, to introduce into the order or contract a provision which that instrument does not contain. In other words, the effect of the testimony, if allowed to remain in the record, would have been to vary the terms of a valid written instrument, which the law will not permit to be done, the presumption being, where the terms of an agreement have been reduced to writing by the parties, that such writing contains all those terms, from which it follows that, as between the parties and their representatives, or their successors in interest, there can be no evidence, other than the contents of the agreement itself, of the terms of such agreement. (Code Civ. Proc., sec. 1856.) That section, it is true, specifies certain exceptional instances in which evidence other than the contents of the contract may be given, to wit, where a mistake or imperfection of the writing is put in issue by the pleadings, or where the invalidity of the agreement is the fact in dispute, or where parol evidence is necessary to explain an extrinsic ambiguity or to establish illegality or fraud. This case, however, does not come within any of those exceptions. So far as the question of warranty is concerned, it is not claimed that the agreement is invalid in the sense in which that word is used in the section of the code, nor is it claimed that there is any mistake or imperfection in the agreement, or any question as to the meaning of the words or language thereof. There is no claim, nor could there be, that the contract is not precisely what the parties themselves made it. The sole contention is that the plaintiff, prior to the execution of the written agreement, made an oral warranty of the horse-power and capacity of the engine and that the defendants are entitled to a judicial decree incorporating such oral warranty into the written agreement. To this proposition a further reply is to be found in the declaration of section 1625 of the Civil Code, as follows: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

In *Peterson* v. *Chaix*, 5 Cal. App. 525, 537, [90 Pac. 948], this court, through Presiding Justice Chipman, stated the rule, in applying it in that case, as follows: "The written contract merged all previous negotiations, and is presumed,

in law, to express the final understanding of the parties. If the contract did not express the true agreement, it was the claimant's folly to have signed it. The court cannot be governed by any such outside considerations. Previous and contemporaneous transactions and facts may be very properly taken into consideration to ascertain the subject matter of a contract and the sense in which the parties may have used particular terms, but not to alter or modify the plain language which they have used." (See, also, *Kullman, Salz & Co.* v. *Sugar Apparatus Mfg. Co.,* 153 Cal. 725, [96 Pac. 369]; *Germain Fruit Co.* v. *Armsby Co.,* 153 Cal. 585, [96 Pac. 319]; *Gardiner* v. *McDonogh,* 147 Cal. 313, [81 Pac. 964]; *Dollar* v. *International Banking Corp.,* 13 Cal. App. 331, [109 Pac. 499]; *Yuba Mfg. Co.* v. *Stone,* 39 Cal. App. 440, [179 Pac. 418].)

The rule is with singular clearness stated in the last-named case (*Yuba Mfg. Co.* v. *Stone*) by Justice Burnett. The following pertinent excerpts may with advantage be incorporated herein: "It is not disputed by appellant that an additional warranty cannot be shown to that contained in the written contract, but it is contended that the offer constituted an effort to prove fraud which operated as an inducement to the execution of said agreement, and which, if shown, would avoid the whole contract and relieve the appellant from the apparent liability on said promissory notes. . . . An 'express warranty' means simply an undertaking or covenant that the thing which is the subject of the contract is or is not of a certain quality or capacity. It is difficult, therefore, to resist the conclusion that appellant sought to add to the warranty contained in said written instrument. Of course, the significance of the said parol assurance was not changed by reason of the fact that it is claimed to have been fraudulently given. Whether the promise was made with or without a deceitful intent, its importance to appellant arose from the consideration that it related to the character of the tractor which was to be furnished. Its quality as a warranty would not be changed or affected in the least by alleging that the representation was fraudulently made."

Again, it is said in that case, referring to the rule that prior representations and negotiations are to be considered as having been merged in the written agreement and cannot

be shown or proved in any other way than by the instrument itself: "Manifestly, this consideration does not preclude either party from showing fraud that might vitiate the apparent contract of the parties. The fraud, however, must relate to and be connected with the agreement which is the basis of the action. Herein, as we have seen, the supposed fraudulent representation is entirely disconnected from the actual contract of the parties and cannot be considerd a material element, since it was entirely ignored and superseded by the written instrument. If appellant had made a similar allegation as to any of the facts recited in said instrument, or had shown by proper averment that his signature to the contract was obtained fraudulently or that he was deceived as to the contents or that it did not contain the full intent of the parties, a different situation would, of course, be presented."

The opinion in question then concludes with these observations, which have pertinent and cogent application to the case before us: "Manifestly, the court, as far as possible, should protect an innocent party against the fraud of one seeking to take an unconscionable advantage; but in this class of cases, when the parties have deliberately reduced their contract to writing and have undertaken to set forth the character of the contrivance which is sold, and there is no mistake or fraud connected with the execution of said instrument, it is reasonable and in accordance with the law to hold that the contract shall not be avoided by reason of some false representation as to the quality of the machine, *which representation the vendee has seen fit to completely ignore in the written instrument.* It is true, of course, that a defrauded party cannot by the simple 'device of a written instrument' be deprived of the right to prove the fraud, but it is equally true that he cannot be permitted to nullify the rule in relation to written instruments by the specious claim that he was deceived by certain oral representations."

Nothing can be added to what is said in the case last above considered with regard both to the question as to the alleged oral warranty of the engine and the claim and allegations of fraudulent representations by the agent of plaintiff to the defendants to induce them (and which they alleged did induce them) to enter into the contract of sale

involved herein. We may, however, with propriety here refer to some very recent California cases which declare the law to be as it is stated and applied in the case last above considered, namely: *Heffner* v. *Gross,* 179 Cal. 738, [178 Pac. 860], the opinion by Mr. Justice Shaw; *Madera Sugar Pine Co.* v. *Livermore,* 179 Cal. 116, [175 Pac. 456]; *De Laval Dairy Supply Co.* v. *Talbott,* 38 Cal. App. 39, [175 Pac. 83].

[6] But we may further suggest that, according to the facts of this case and the authorities, the defendants waived the alleged fraud and misrepresentation as to the capacity and power of the engine which they charge were made by the agent of plaintiff who negotiated the sale and which they allege and attempted to prove influenced and induced them to enter into the contract, and are estopped from raising the question of fraud in this case.

The evidence which was presented by the defendants, but which was stricken from the record, shows that they received the engine on the fifth day of July, 1912, and immediately put the engine to use; that they then discovered that it not only failed to develop the thirty horse-power which they allege that the plaintiff warranted its capacity to be, but failed to work at all—at least, satisfactorily. Notwithstanding their knowledge of these facts, they retained the engine, and it is not made to appear that they made any complaint of the failure of the engine to measure up, as to power, to the representations which they claim were falsely made by the plaintiff as to the capacity or power of the tractor until the seventeenth day of November, 1912—a period of over four months after they had received the engine and attempted to work it—when they addressed to the plaintiff a letter in which they said: "As we have had a very poor year with our contracts, we will not be able to pay note due on November 1, 1912. We would like to arrange if possible to have all payments extended one year, as that will give us a chance to get some kind of work for the tractor, as it was a total failure on our wood contract and by trying to haul with it, we only got out about $\frac{1}{5}$ of our contract this season." The letter then proceeded to say that the engine would not do the work as guaranteed, etc., but this is not material to the present consideration.

The defendants, by the contract, were given ten days within which to test the engine, and if, within that time, they discovered that it failed to meet the terms of any warranty contained in the contract, they likewise agreed to give plaintiff written notice thereof at once. The contract, after provisions relating to the duty of the plaintiff on receiving such notice from the defendants and obligating the former to make its warranty good, further provides: "Failure to so make such trial or to give such notice in any respect, shall be conclusive evidence of due fulfillment of warranty on the part of said company and that the machinery is satisfactory to the purchasers, and the company shall be released from all liability under the warranty." There is not in the record or there was not offered any evidence whatever that the defendants gave plaintiffs any written notice of the defectiveness of the tractor in any respect except such notice as may be extracted from their letter of November 17, 1912, above referred to, and manifestly that was not the notice required by the agreement of the parties.

It is very clear from the foregoing statement of the situation that the defendants waived any fraud which they claim might have characterized the transaction before it culminated in the execution of the written contract, or, perhaps, more properly speaking, waived the right to raise the question of fraud.

"A defrauded party," says the supreme court, in *Ruhl* v. *Mott,* 120 Cal. 668, 677, [53 Pac. 304], "has but one election to rescind, and he must exercise that election with reasonable promptness after discovering the fraud. (*Dennis* v. *Jones,* 44 N. J. Eq. 513, [6 Am. St. Rep. 899, 14 Atl. 913].) Delay in rescission is evidence of a waiver of the fraud, and of an election to treat the contract as valid. Any acts evincive of an intent to abide by the contract are evidence of an affirmance of the contract, and of a waiver of a right of rescission. (*Delano* v. *Jacoby,* 96 Cal. 275, [37 Am. St. Rep. 201, 31 Pac. 290]; *Marten* v. *Burns Wine Co.,* 99 Cal. 355, [33 Pac. 1107]; *Bailey* v. *Fox,* 78 Cal. 389, [20 Pac. 868]; *Bach* v. *Tuch,* 126 N. Y. 53, [26 N. E. 1019]; *Crooks* v. *Nippatt,* 44 Minn. 239, [46 N. W. 349]; *Pearsoll* v. *Chapin,* 44 Pa. St. 9.)"

The above is only declaratory of the rule of our code (Civ. Code, sec. 1691), applied, however, to a situation such

as we find here.   The section says that a party to a contract
"must rescind promptly, upon discovering the facts which
entitle him to rescind, if he is free from duress, menace,
undue influence, or disability, and is aware of his right to
rescind."   There is no question of undue influence, menace,
or like obstacles to the free exercise of the will mentioned
by said section in this case.   The letter of the defendants
of November 17, 1912, cannot justly be construed to be less
than an affirmance of the contract.   In other words, said
letter and the expressions it contains were "evincive of an
intent to abide by the contract," and, therefore, constituted
evidence of a waiver of the right of rescission.

It is wholly unnecessary to multiply cases illustrating the
application of the principle under discussion.   In our own
state reports may be found many such cases other than
those cited above.

We can perceive no possible ground upon which the appel-
lants may expect to prevail in this case under its circum-
stances as they are shown here and as they were shown
by the record in the case on the former appeal.   If they
became parties to a bad bargain, it is, of course, to be
greatly deprecated that they were not fortunate enough
to relieve themselves from the ill consequences thereof.
But when a person is lured or otherwise led into a business
engagement or a contract, which is, as to him, unconscion-
able or inequitable (and we are not to be understood as in-
timating that upon the record we are justified in saying
that this is of that class), he must, before he can justly
expect equity to extend to him her protecting hand, exer-
cise a proper degree of vigilance and act promptly after he
has discovered that an unconscientious advantage has been
taken of him in the transaction, to the end that not only
may the wrong which has thus been inflicted upon him be re-
dressed, but that the rights of the other party to the agree-
ment, if rights he has, may be preserved, or he be restored
as near to *statu quo* as the circumstances of the situation
will permit and in equity justify.   The defendants here,
as we have shown, not only slept upon their rights, but
by their conduct gave the plaintiff the right to believe
that the bargain was satisfactory to them.   They knew
what their contract was and had ample opportunity to sub-
ject to a practical test the machinery they had purchased,

and, indeed, did try out the engine on numerous occasions; yet they took no timely steps looking to a rescission, but, after testing the capacity and power of the tractor, they kept the machine and asked for an extension of the times for payments on the purchase price. Thus they failed to bring themselves even within the shadows of a court of equity, and it does not lie in their mouths to complain of a dilemma into which they alone have brought themselves, assuming that the merits of the transaction as such are on their side.

The judgment appealed from is affirmed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 16, 1920.

All the Justices concurred.