[Civ. No. 16671. Second Dist., Div. One. Feb. 18, 1949.]

WAYNE L. DOHRMAN, Respondent v. WES DURSTON et al., Appellants.

Rex B. Goodcell and Manley C. Davidson for Appellants.

Benjamin Chipkin for Respondent.

DORAN, J.—Plaintiff, as the assignee of one L. S. Hutchinson, hereinafter referred to as "mortgagor," instituted the present action to recover the value of certain personal property described as "1 Caterpillar, Model D8" etc., and "1 Woolridge Scraper" etc., alleged to have been converted by the defendants Durston and Spicer, the latter claiming under a chattel mortgage from Hutchinson. It appears that prior to October 29, 1945, Hutchinson had borrowed $15,000 at the

Bank of America which loan was guaranteed by Spicer. On December 21, 1945, by way of a settlement between Hutchinson and Spicer, the former executed a chattel mortgage to Spicer covering the property above mentioned for the purpose of securing a promissory note of $4,500 payable at the rate of $500 per month. Certain other property was transferred to Spicer by bill of sale, apparently as a part of the same settlement, which property the trial court found had not been converted by the defendants.

The chattel mortgage from Hutchinson to Spicer, executed in Nevada, provided that upon default, "the said mortgagee may, without foreclosure and without legal proceedings and without any previous demands herefor, and with the aid or assistance of any person or persons enter upon the premises of the mortgagor, or such place as any of the property . . . may be found and take and carry away the mortgaged property, or any part thereof, and with or without notice to the mortgagor, at either public or private sale, sell and dispose of the same . . . for the best price he can obtain," paying to the mortgagor any overplus remaining after satisfaction of the mortgage debt and expenses.

Plaintiff's complaint alleges that on October 15, 1946, the defendants Durston and Spicer entered upon the mortgagor Hutchinson's property in Lander County, Nevada, and without the mortgagor's consent, removed the mortgaged equipment to Los Angeles County, California. Defendants' answer alleges that after Hutchinson had failed to make any payments on the chattel mortgage, Spicer, as mortgagee, seized the property, "acting under the terms and conditions of said chattel mortgage and in accordance with the powers therein vested in him"; that thereafter, at Austin, Nevada, Spicer sold the property to the defendant Durston for $9,000, and that Durston then removed it to Los Angeles. By way of counterclaim, defendants set up certain expense items connected with a retaking of the property, namely, $284.46, traveling expenses; $350 paid as attorney fees in Reno, Nevada, and Los Angeles; $100 attorney fees for services rendered to Hutchinson and guaranteed by Spicer; and rental of a power control unit at $900. The $9,000 received by Spicer from the sale of the property to Wes Durston was reported to the mortgagor and accounted for by deducting therefrom the above expenses together with the amount of principal and interest due on the promissory note to Spicer, and the amount of a dishonored check for $1,500 given by

Hutchinson to Spicer, with interest thereon. A check for the balance of $1,069.39 was sent to Hutchinson but according to the trial court's findings, was refused and returned to Spicer.

Trial of the issues before a judge sitting without a jury, resulted in a judgment for plaintiff, respondent herein. The trial court found that the defendants had taken and converted the property in question, and that the value of the property converted was $9,000. There were also findings "that an alleged sale" was made by Spicer to Durston, "but that said sale was invalid"; that such sale was not made in Austin, Nevada, but was made in Los Angeles. The court also found that the mortgagor Hutchinson "failed to make a payment on account of principal and interest of the promissory note." Conclusions of law were to the effect that plaintiff had been damaged to the extent of the value of the property converted, namely, $9,000, less the sum of $1,500 representing the dishonored check given by Hutchinson to Spicer. Defendants were held not entitled to recover on the counterclaim.

At the conclusion of the trial the judge stated: "I have decided this case purely on the ground that there should have been a sale . . . either public or private at which Mr. Spicer became the purchaser, and that did not take place." The $4,500 due on the mortgage note from Hutchinson to Spicer was not taken into consideration for the purpose of reducing the damages for conversion. The trial court also observed that "Durston was not an innocent purchaser for value without notice."

It is appellants' contention that "The evidence does not justify the findings or conclusion that there was a conversion"; further, that even if the trial court was justified in finding that there was a conversion, the judgment is nevertheless erroneous "because of the failure of the trial court to offset the amount of the mortgage debt against the value of the property" converted. The respondent's brief takes the position that the judgment was fully supported by the evidence; that "Where mortgagee takes possession of mortgaged property and sells it to a third party without following the method prescribed by law it amounts to a conversion resulting in an extinguishment of the lien."

In reference to the alleged conversion the record discloses that two or three months before the mortgagee's seizure of the property several conversations had taken place between Spicer and Durston; that "Mr. Spicer felt that Mr. Hutchin-

son would be unable to pay the notes off and he would have to take the tractor," and Durston agreed to purchase the equipment for $9,000. Just prior to the seizure on October 15, 1946, Hutchinson having paid nothing, Spicer located the property in Nevada, and telephoned Durston "The equipment is ready, and come and get it." A bill of sale of the property, dated October 15, 1946, Spicer to Durston, was introduced in evidence, although the exact date of execution of that instrument is in some doubt.

As stated in appellants' brief, "Durston sent his man to Nevada for the property, and defendant Spicer delivered the property to Durston's man in Nevada; thereafter Durston's employees brought the property to Los Angeles County and repairs were made thereon. Hutchinson was present in Durston's place of business and saw these repairs being made within a week after October 15, 1946. The attorney for Hutchinson and the plaintiff requested Spicer not to sell the property in November of 1946, because Hutchinson was willing to make some necessary repairs and asked Spicer to permit Hutchinson to make these repairs so that the same could be sold."

 That the parties to the mortgage had the right to make such an agreement for informal foreclosure as was contained in the instrument cannot well be doubted. Indeed, section 2932 of the Civil Code expressly provides that "A power of sale may be conferred by a mortgage upon the mortgagee or any other person, to be exercised after a breach of the obligation for which the mortgage is a security." Such sales are not uncommon and are referred to in many of the cases. The chief requirement is compliance with the terms of the mortgage, and in *Sherlock* v. *Alturas State Bank*, 73 Cal.App. 391, 398 [238 P. 816], the court says: "The law is well settled that a power of sale, if given in a chattel mortgage, must be exercised in accordance with the provisions thereof." In 5 California Jurisprudence, page 114, section 55, it is said: "The sale may be public or private, . . . But there must be a sale. Merely crediting the mortgagor with the estimated value of the property does not entitle the mortgagee to maintain a personal action against the mortgagor for the balance [due]." Cited therein is *J. I. Case Threshing Machine Co.* v. *Copren Bros.*, 32 Cal.App. 194 [162 P. 647].

In the instant case, the power of sale conferred by the mortgage was a broad one, unburdened by technicalities. The

sale was not required to be held "in the manner provided by law," or in any other particular form. As hereinbefore indicated, the mortgagee was authorized to seize and sell the property "without foreclosure and without legal proceedings," with or without notice, at either public or private sale.

The evidence in reference to the mortgagee's seizure of the mortgaged property and the sale thereof to the defendant Durston, is without material conflict, and shows nothing more nor less than a reasonable exercise of the power of sale contained in the chattel mortgage. The fact that the proposed sale had been previously discussed by Spicer and Durston does not change the situation. Nor is the precise place of the sale or the exact date when the bill of sale was delivered to the purchaser, particularly material.

No case has been cited in which such an act has been denominated by the courts as a conversion. The cases mentioned in respondent's brief in which a mortgagee has been held guilty of conversion, have all involved some unauthorized act or have been concerned with a situation different from that in the present controversy. And in *Metheny* v. *Davis,* 107 Cal.App. 137 [290 P. 91], cited by respondents, the court simply held that "Where a mortgagee takes possession of the mortgaged property and sells it to a third person without following either the method of sale prescribed by the law *or the mortgage* it amounts to a conversion." (Italics added.) In the instant case the mortgaged equipment was sold according to the method of sale prescribed by the mortgage. Therefore respondent's contention that it was sold "without following the method of procedure as prescribed by law," is beside the point.

In view of the trial court's finding that the price realized at the sale to Durston "was the reasonable value on October 15, 1946, of said property," it is evident that no advantage was taken of the mortgagor and that no legal rights of the latter were in any manner prejudiced. No deficiency resulted; the sale was reported to Hutchinson and a check tendered for the balance after deducting the amount due on the mortgage note together with expenses incurred. The net result of this procedure was exactly that which follows any mortgage foreclosure sale,—the mortgagor was forced to pay the amount of the obligation plus expenses which the default had engendered.

The judgment of the trial court, penalizing the mortgagee for doing what the mortgage provided for is without support

either in evidence or in law. In view of the decision here reached, it becomes unnecessary to discuss the matter of the damages awarded for the conversion and the trial court's failure to deduct from such damages the amount of the mortgage debt.

As hereinbefore noted, defendants have, before trial, tendered to plaintiff the sum of $1,069.39, representing the balance remaining after deducting the mortgage debt, expenses, etc., from the $9,000 received on the foreclosure sale to Durston, which tender was refused. This tender was further confirmed in the defendants' answer which prays that "it be found by the Court that the sum of $1,069.39 is due without interest by defendant Spicer to plaintiff," etc. In view of these facts, and the conclusion herein reached that no conversion was committed, the judgment of the trial court is reversed with directions to enter judgment in favor of the plaintiff only in respect to said sum of $1,069.39 without interest or costs, and against plaintiff in respect to the issue of conversion.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied March 8, 1949, and respondent's petition for a hearing by the Supreme Court was denied April 18, 1949.