[Civ. No. 4643.   Fourth Dist.   June 18, 1953.]

ROSCOE D. PARRISH et al., Respondents, v. CHARLES P. GRECO et al., Defendants; FRANK MARTORANO, Appellant.

Ralph Moradian for Appellant.

Fuller & Christenson for Respondents.

GRIFFIN, J.—On February 16, 1950, defendants Charles P. Greco and Mary P. Greco executed and delivered to plaintiffs and respondents their "Installment Note—Collateral

Security'' in the sum of $8,798.50, payable $100 per month, plus interest, to secure a loan made to them. It was recorded on April 22, 1950. Attached was an inventory of certain furnishings of the ''Hotel Lindsay'' owned by the Grecos. The Grecos were also indebted to plaintiffs for a note in the sum of $15,000, secured by a first trust deed on the hotel, which sum was payable at the rate of $100 per month. In July, 1950, the Grecos entered into an Exchange Agreement with appellant Frank Martorano for the exchange of that hotel and the furnishings for his properties in Campbell, California. By the terms of that agreement the Grecos agreed ''to pay or assume'' indebtedness on appellant's property to the extent of $37,000 and appellant agreed ''to pay off or assume indebtedness'' on said Lindsay Hotel in the amount of $37,000, and Martorano agreed to pay to Grecos an additional $14,000.

Subsequently, on September 15, 1950, appellant signed an escrow instruction listing the collateral security note in the sum of $8,348 on the credit side, with the notation ''Subject to chattel.'' Along with it are listed deeds of trust for $15,000 and one for $5,300, with the notation ''Loan Assumed.'' Appellant admittedly agreed to assume the payment of the two trust deeds. (One was a second trust deed in default and appellant subsequently liquidated that indebtedness.) Each party gave a valuation of $60,000 on their respective properties. The instruction signed by the Grecos listed the collateral security note at $8,548, with the notation ''Loan Assumed.''

There are several variances as to the listed items on the respective instructions and also between them and the terms of the original agreement of exchange. Shortly after the escrow instructions were signed, about October, 1950, appellant called on plaintiffs and inquired about the trust deeds and notes held by them and made an inquiry as to the amount due thereunder and inquired in reference to the payment thereof. There is conflicting evidence as to what was said on that occasion. It is plaintiffs' contention that appellant orally agreed with them that he would assume and pay the notes secured by the trust deeds and also the ''Installment Note— Collateral Security,'' if plaintiffs would agree to reduce the monthly payments on each obligation from $100 to $50 per month plus interest; that plaintiffs accordingly agreed and appellant paid the accrued interest thereon and made monthly

payments on the principal thereafter at the rate of $50 per month plus interest, on each obligation until January, 1951, at which time he refused to make any more payments on the "Installment Note—Collateral Security," and plaintiffs declared the unpaid balance due, sold the furnishings for $1,000, and as a result plaintiffs credited this sum on said note and instituted this action against the Grecos as original obligors and appellant on his oral agreement "to assume the payment of said obligation." Judgment was rendered against the Grecos and appellant for the deficiency.

Martorano appealed and contends (1) that the evidence is insufficient to show that appellant ever legally assumed the payment of the so-called "Installment Note—Collateral Security"; (2) that the so-called chattel mortgage was not legally executed; and (3) that no valid sale was had thereunder.

The trial court found that appellant purchased the encumbered hotel and personal property from the Grecos, and at that time appellant did enter into an "oral agreement" assuming the obligation evidenced by the collateral note, in consideration of the reduction by plaintiffs of the monthly installments of $100 thereon, as well as a similar reduction upon the deed of trust; that in furtherance of the agreement, appellant went into possession of the furnishings and retained such possession until they were sold in accordance with the terms of the original written note and chattel mortgage.

Plaintiffs' testimony is that, after appellant signed the agreement of exchange agreeing "to pay off or assume" the indebtedness on the Lindsay Hotel and signed an escrow instruction agreeing to assume the trust deed loan and to take the furniture "subject to chattel" mortgage of $8,348, he came to them to verify the amounts and the fact that it could be done. Mrs. Parrish's testimony is that appellant asked to see the chattel mortgage and list of furniture given as security; that he was disturbed because he did not think all of the furniture listed was in the hotel; that he told her "You needn't worry; the hotel is worth it"; that "he said he was taking over, and he would pay them; later we arranged the amounts that we would accept $50 on each, with interest, and he asked permission to pay more at any time so he could pay it off quicker"; that Mr. Parrish wanted the amount due on this chattel mortgage added to the first trust deed and appellant said "No, let it ride, I want to pay it off as fast as

I can and I prefer to pay it this way"; that plaintiffs agreed to reduce the monthly payments as suggested by appellant; that appellant requested them to apply payments made by him accordingly; that appellant "fixed up" a receipt book in which to enter the payments and they were accordingly kept. The regular monthly payment reductions on the furnishings were shown on the reverse side of the instalment note. She then testified that appellant took the chattel mortgage, inventory and trust deed home with him for further study and later returned them.

Greco testified Martorano originally agreed "that he would assume the two obligations (trust deeds) . . . assume it and make the payments." It is appellant's story that he agreed to pay $50 per month "toward the chattel plus interest, as long as I see fit . . . so long as I had any use for the furniture; that when the time came that I didn't have no more use for the furniture, and I notified Mr. and Mrs. Parrish they were to take that furniture out of there"; that he told them he "didn't want to assume the chattel" and that he never agreed to assume it nor take it over as his own obligation.

Although the evidence is conflicting, there is sufficient evidence justifying the trial court in finding that the appellant orally agreed to assume the obligations set forth in the so-called chattel mortgage and note. It is appellant's contention that such an oral agreement would not be sufficient to support the judgment since, under section 1624 of the Civil Code, paragraph 2, a special promise to answer for the debt, default or miscarriage of another must be in writing and be subscribed by the party to be charged, and that under section 2922 of the Civil Code "A mortgage can be created, renewed, or extended, only by writing executed with the formalities required in the case of a grant of real property." (Citing such cases as *Miller* v. *Roach*, 15 Cal.App.2d 427 [59 P.2d 418]; *Brichetto* v. *Raney*, 76 Cal.App. 232, 247 [245 P. 235]; 94 A.L.R. 1329, and cases cited; and 4 McK. Dig., Chattel Mortgages, p. 976, § 86.) In this connection it is argued that no consideration was received by appellant to assume the obligation; that no detriment resulted to plaintiffs because appellant was paying the interest and payments as agreed upon; that it was not the intention of plaintiffs to bind appellant personally for the entire obligation; that plaintiffs denied the validity of their own theory of novation when they sought to hold and the court found that the Grecos were equally liable with appellant on the original note.

It is plaintiffs' contention that the facts here recited bring them within the exception noted in section 2794 of the Civil Code, which reads: "A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: . . . 2 . . . Where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor and the person in whose behalf it is made, his surety."

In the Miller and Brichetto cases relied upon by appellant, there was no evidence of any claimed oral agreement to assume liability. In fact, those cases recognize that there may be either a written or oral agreement to assume a mortgage.

The law is that a new promise which discharges another obligation by novation, or one in which no obligation of the other exists or is contemplated, is necessarily original since there can be no debt of another. Where, however, the debt of the other continues to exist, a new promise by a third party to pay it has, from the beginning, been considered outside of the statute where made under such circumstances as to render the new promisor himself a debtor. The rule is stated in *Brichetto* v. *Raney, supra,* to be (quoting from syllabus 8) that:

"There is a broad distinction, in the effect thereof upon the rights of the parties, between the taking of mortgaged property subject to a mortgage subsisting thereon at the time of such taking and the assumption or agreement by the grantee to pay the debt secured by such mortgage, in that, where the purchaser or grantee of the mortgaged property takes it *subject* to the mortgage only, there being no expressed or implied agreement to assume the mortgage debt, he is bound only to the extent of the property, but if the debt be assumed by the grantee he becomes the principal debtor, while the mortgagor becomes the surety." (See, also, Professor Simpson on *Statute of Frauds*, 36 Cal.L.Rev., p. 405; and *Braun* v. *Crew*, 183 Cal. 728 [192 P. 531].)

The argument that there was no consideration for the promise of appellant to assume the obligation is without merit. The evidence shows that the agreement for the reduction of the payments on the trust deed, as well as the collateral security note to the sum of $50 per month each, was a valid consideration within the meaning of section 1605 of the Civil

Code. (*Bank of America* v. *Hollywood Improvement Co.*, 46 Cal.App.2d 817, 821 [117 P.2d 13]; *Stein* v. *Leeman*, 161 Cal. 502, 511 [119 P. 663]; *Miller* v. *Roach, supra*, p. 431.) Whether defendants Greco were properly held liable is not a question before us since they have not appealed from the judgment rendered against them.

■ Next, appellant argues that the so-called chattel mortgage was not legally executed because of the failure of the parties to be charged to fill in certain blanks in the printed form. He cites in support of this contention 59 Corpus Juris Secundum, page 166, section 122; and section 2956, Civil Code. The evidence shows that the note and collateral security agreement are printed on the same sheet. It was drawn up by a notary public and real estate agent. The note is properly drawn, made payable to plaintiffs and was signed by the parties to be charged. However, the portion pertaining to the right to sell the collateral security upon failure of the parties to perform, omits the names of the parties with whom the personal property was deposited and omits the names of the persons empowered to sell it "at public or private sale without any previous notice to us of any such sale." This portion of the instrument is properly signed by the Grecos.

■ The instrument, as executed, fairly indicates what parties were intended to be named therein. As between the parties and persons who, before parting with value, have actual notice thereof, the instrument is valid. No release of liability was effected by such omission. (*Teater* v. *Good Hope Dev. Corp.*, 14 Cal.2d 196, 209-211 [93 P.2d 112]; Civ. Code, § 2973; 17 Cal.Jur., p. 731, § 33.)

■ Lastly, the claim that no evidence was produced by plaintiffs' showing that a valid sale of the furniture was had under the collateral security instrument because plaintiffs failed to fully comply with section 692 of the Code of Civil Procedure and show that in addition to giving personal notice to the parties to be charged plaintiffs also posted notice of the time and place of sale in three public places is without merit. (*Dohrman* v. *Durston*, 90 Cal.App.2d 236 [202 P.2d 607].) In support of the argument appellant cites *Metheny* v. *Davis*, 107 Cal.App. 137 [290 P. 91]; *J. I. Case Threshing Machine Co.* v. *Copren Bros.*, 32 Cal.App. 194 [162 P. 647]; and *Kee* v. *Becker*, 54 Cal.App.2d 466, 470 [129 P.2d 159].

Here the sale was made according to the terms of the collateral security agreement, and therein notice of such sale was

specifically waived. Accordingly, the cases relied upon by appellant are factually distinguishable.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied July 16, 1953, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1953.