[Civ. No. 17006.  First Dist., Div. One.  Nov. 30, 1956.]

HAZEL E. STOLK, Appellant, v. DONALD K. LUCAS et al., Respondents.

Edmund J. Holl for Appellant.

Jack C. Small for Respondents.

AGEE, J. pro tem.*—This is an appeal by plaintiff and cross-defendant from a judgment decreeing that she owns one-half and defendants and cross-complainants, husband and wife, own the other half of a house and lot as tenants in common and that defendants and cross-complainants own certain household furnishings in which plaintiff and cross-defendant has no interest. The judgment ordered that the house be sold and the proceeds divided. The judgment also provided that cross-defendant Neil Stolk has no interest in any of the property involved. He has not appealed.

The main issue on this appeal is the sufficiency of the evidence to support the findings. Appellant and Neil Stolk purchased the house and lot in 1946 and began living therein. They were married in June, 1949. In March, 1951, Stolk hired respondent Lucas, who is a private detective, to keep

*Assigned by Chairman of Judicial Council.

appellant under surveillance. On May 7, 1951, appellant and Stolk separated and she left the premises. On May 8, 1951, the following events took place: Stolk commenced a divorce action in San Mateo County; he leased the premises to respondents for one year and they and their children moved in; Stolk and respondent Lucas made an oral agreement that Lucas would continue his surveillance of appellant through the month of July, 1951, and that his total charge for his services and expenses connected therewith would be $2,500; Stolk thereupon executed his promissory note payable to Lucas in the amount of $2,500; Stolk then left for Reno to accept employment there. The reason for the continued surveillance after the divorce action was filed was that Stolk desired to obtain additional proof that appellant was unfit to have custody of their minor child. (It should be noted that Lucas fully performed the services agreed upon and kept a detailed report thereof, which he produced in court. It fully supports the reasonableness of his charge.)

On May 17, 1951, Stolk asked respondent Lucas if he wanted to buy Stolk's interest in the house. Lucas answered that he did. It was thereupon agreed that Stolk would execute a quitclaim deed of such interest and Lucas would cancel the note. At that time, Lucas had performed services worth approximately $800. The note was cancelled and the deed was executed and delivered to Lucas on that same day. The house was subject to a bank loan on which there was then a balance due of approximately $6,300. The value of the real property does not appear in the record.

On May 14, 1952, appellant, as cross-complainant, obtained an uncontested divorce in the action commenced by Stolk in San Mateo County. In the decree she was awarded all of the real property involved in the instant action and all of the furniture and furnishings therein. Respondents were not made parties in the divorce action. Appellant then commenced this action against respondents on July 24, 1952, to quiet title to the said real and personal property. Respondents cross-complained for a decree declaring them to be the owners of one-half of the real property and all of the personal property.

Appellant contends on this appeal that respondent Lucas was in a fiduciary relationship with Stolk and overreached his client in obtaining the deed. This was not made an issue at the trial. Appellant did not even attempt to prove the value of the interest acquired by Lucas under his deed from

Stolk. There is no evidence to support appellant's contention and Lucas' account of the transaction completely answers the claim of overreaching.

Another point raised for the first time is that the deed was not intended to be absolute but was given as security for the payment of Lucas' services and was therefore a mortgage. The evidence is to the contrary. Stolk, who was called by appellant as a witness, testified as follows: "Mr. Lucas came to Reno with his real estate broker and wanted to buy the house. I said that would be fine." Lucas testified: "Q. At the time this deed was signed, did you have a conversation with Mr. Stolk pertaining to his liability on the $2500 note? A. Yes, I did. Q. What was said pertaining to his liability on the note? A. I cancelled the note at that time. . . . Q. What was your purpose and intention, Mr. Lucas, in cancelling the note and the taking of the deed? A. Mr. Stolk asked me if I wanted to buy his equity in the house and I told him yes. Q. You knew at the time there was a divorce action pending? A. Mr. Stolk told me it wasn't community property, they weren't married when they bought the house. . . . Q. Mr. Lucas, counsel asked you if you paid any cash at the time the deed was executed, and I believe your testimony was that you did pay $10 in cash? A. Yes. Q. And I am going to ask you if at the time this deed was executed, did you at that time release Mr. Stolk from the obligation of this $2500 promissory note? A. Yes, I did. . . . Q. You gave to Mr. Stolk, at the time he executed this deed, not only the $10.00, but you gave him the release from the obligation of this $2500 note, is that correct? A. That is right."

■ It is well settled that the evidence must be clear and convincing to justify holding that a deed which purports to convey land absolutely is in fact a mortgage. (*Sheehan* v. *Sullivan,* 126 Cal. 189 [58 P. 543]; *Chapman* v. *Hicks,* 41 Cal.App. 158 [182 P. 336]; *Couts* v. *Winston,* 153 Cal. 686 [96 P. 357]; *Beeler* v. *American Trust Co.,* 24 Cal.2d 1 [147 P.2d 583]; *Stromerson* v. *Averill,* 22 Cal.2d 808 [141 P.2d 732].) ■ Here, the testimony is clear and convincing that the deed was intended by both grantor and grantee to be an absolute conveyance and was not given as security.

The theory advanced by appellant in her complaint was that respondents and Stolk entered into a conspiracy to deprive her of her interest in the real and personal property involved. There is no evidence to support such a claim and appellant does not even mention it in her briefs on appeal.

The personal property involved consists of certain household furniture which was purchased by the Stolks when they were living together and which was on the premises when respondents moved in. It was subject to a chattel mortgage executed by the Stolks on May 20, 1950, to Seaboard Finance Company. Payments became due on the mortgage. On August 2, 1951, Stolk executed a written authorization to respondent Lucas, authorizing the latter to turn over the furniture to Seaboard. Respondent Lucas had Seaboard phone appellant on several occasions about the overdue payments. In September, 1951, Seaboard sent out a truck to repossess the furniture. The furniture was not actually moved away from the premises because respondent Lucas asked to bid on it. Seaboard agreed to sell the furniture to Lucas for $680, which was the balance due on its mortgage. On September 14, 1951, Lucas obtained a loan of $623.80 from Fireside Finance Company, secured by a chattel mortgage on the furniture.* Seaboard received $600 from this loan and $80 from Lucas directly. Seaboard thereupon executed a written assignment of its note and chattel mortgage to Lucas. ■ There is no question that Seaboard had a right to take possession of the furniture under the terms of its mortgage when the payments thereunder became delinquent. The mere fact that it allowed the furniture to remain on the premises instead of taking it away in the truck is of no legal significance. Seaboard's right of possession was transferred to Lucas under the assignment.

■ However, title to the furniture remained in the mortgagors (Stolks) until there was a sale under the power of sale provision contained in the mortgage. This provision allowed a private sale but expressly provided for notice thereof by registered mail to the mortgagors not less than five days before the sale. Such notice was admittedly not given. There was therefore no valid sale. (*Dohrman* v. *Durston,* 90 Cal.App.2d 236, 239 [202 P.2d 607].) Respondents, as assignees of the note and mortgage, are entitled to possession of the furniture until the mortgage is satisfied or the furniture sold under proper proceedings.

That portion of the judgment decreeing that appellant owns one-half and respondents own the other one-half of the real property as tenants in common and ordering the sale

---

*We do not purport to pass upon any rights of Fireside Finance Company, it not having appeared in the action.

thereof and division of the proceeds is affirmed; that portion of the judgment relating to the personal property is reversed and any further action with regard thereto is to be taken in accordance with this decision.

In the interests of justice, respondents shall recover their costs on appeal.

Peters, P. J., and Wood (Fred B.), J., concurred.